GEORGE K. SHOENBERGER

v.

JOHN McEWEN.

IMPLIED WARRANTY.—Where one orders an article of a manufacturer and designates a particular kind of material, out of which the article is to be made, in whole or in part, such material not being made by the manufacturer himself, if the manufacturer uses the designated material, the law will not imply a warranty as to its quality or fitness, unless it be shown that the manufacturer failed to use reasonable and ordinary care in selecting it.

APPEAL from the Superior Court of Cook county; the Hon. SIDNEY SMITH, Judge, presiding. Opinion filed November 11, 1884.

Mr. FRANK J. LOESCH and Mr. R. BIDDLE ROBERTS, for appellant; as to implied warranty, cited Phelan v. Andrews, 52 Ill. 486; Hoe v. Sanborn, 21 N. Y. 552; Benjamin on Sales,

4th Am. Ed. 657; Beck v. Sheldon, 48 N. Y. 365; Dounce v. Doe, 64 N. Y. 411; Cunningham v. Hull, 4 Allen, 268.

Messrs. ABBOTT, OLIVER & SHOWALTER, for appellee.

WILSON, P. J. This was assumpsit brought by appellant, Shoenberger, against appellee, McEwen, on a promissory note for $386.24 given by McEwen to appellant in part payment for two boilers made by appellant for appellee.

Appellant was a manufacturer of steam boilers and, in response to an invitation from appellee, sent to the latter a written proposal to make for him two tubular boilers for the sum of $1,750. The proposal contained full specifications as to the size, manner of construction and the material to be used; and among other things it was specified that the shells of the boilers were to be made of "5-10 in. C. H. No. 1 iron," by which was meant a particular brand of iron known in the market as charcoal hammered iron of a certain grade. Appellant's bid was accepted by appellee, and the boilers were made and put in place in conformity with the specifications. After being used for a time, one of the boilers gave out by reason of an inherent defect in the iron of which the shell was constructed, caused by improper rolling at the furnace when made.

Upon the trial in the court below, appellee, under the plea of the general issue and notice of special matter by way of recoupment, offered proof of damages sustained by him by reason of the defect in the boiler; and under the instructions of the court, the jury deducted $222 from the amount of the note, and rendered a verdict in favor of appellant for the balance, $177.75.

No complaint was made as to the workmanship or as to the manner in which the boilers were constructed; nor was it claimed that appellant knew of any defect in the quality of the iron, nor that the defect was discoverable by any of the tests used by boiler manufacturers. The boilers were tested by hydrostatic pressure before leaving the works to 125 pounds to the square inch, as specified in the proposals. The

iron of which the boilers were made was manufactured at a furnace in Pennsylvania, and purchased by appellant, who was not a manufacturer of iron, to be used in their construction. The only ground of complaint was that the iron was unsound and unfit for the purpose intended. The court ruled that appellant was liable for the damages caused by the defect in the iron, on the ground that he was a manufacturer of the boilers, and, as such, must be held to have impliedly warranted the soundness of all the material used by him in their construction.

The general rule of the common law is that upon an *executed* sale of specific chattels the seller is not liable for defects in the quality of the article in the absence of fraud or express warranty. Where the purchaser is not deceived by any fraudulent misrepresentations or concealment on the part of the seller, and the buyer demands no warranty, the law presumes that he exercises his own judgment, and the doctrine of *caveat emptor* applies. A principal exception to this rule is found in cases of executory contracts for the manufacture and sale of goods *in futuro*, where from the nature of the case no examination of the article is possible; or in cases where the contract is such as to show that the duty and responsibility of ascertaining and judging of the quality are thrown upon the seller, as where he undertakes to furnish an article for a particular specified purpose. In Story on Sales, Sec. 371, it is said: "Upon an executory contract to manufacture an article, or to furnish it for a particular use or purpose, a warranty will be implied that it is reasonably fit and proper for such purpose and use, so far as an article of such a kind can be." To the same effect is 1 Parsons on Con., 586 (side): Benjamin on Sales, 645. And such warranty includes not only the workmanship, but also the quality and soundness of the material of which the thing is made, as well as all latent defects not known to the purchaser, whether known to the seller or not. 1 Par. on Con. 586; Benj. on Sales, 644, *et seq.* If, therefore, this were the case of an ordinary purchase of a chattel from the manufacturer, or if it had been an order on appellant to manufacture the boilers in question, without

specifying the kind or quality of material to be used in their construction, but the order had been given in sole reliance on the judgment and skill of appellant as to the quality of the material, the law would have implied a warranty both as to the workmanship and the soundness of the iron actually used.

And this brings us to the inquiry as to how far appellant's liability, as upon an implied warranty, is affected by the circumstance that the kind of iron of which the boilers were to be made was specified in appellant's proposal. The proposal, having been accepted by appellee, became a contract between the parties, binding alike upon each in respect to all its terms and conditions. One of its provisions required appellant to make the shell of the boilers out of a designated brand of iron. The furnishing of "C. H. No. 1 iron" became an indispensable condition of the contract. Appellant could no more dispense with the kind of iron designated without violating his contract, than he could change the size or dimensions of the boilers. It was shown upon the trial that there was a better quality of iron, known as charcoal hammered "flange" iron, but by the terms of the contract appellant could not use it if he desired to. He could perform his contract only by using the kind of iron agreed upon.

Independent of any adjudications on the subject it would seem most unreasonable to hold appellant liable as upon an implied warranty of the sufficiency of material designated by appellee himself, in the absence of proof showing that appellant knew, or by the use of ordinary diligence in selecting the particular plates used might have discovered, they were defective. The cases bearing upon the subject of implied warranties are not altogether harmonious, but we think both reason and justice, as well as the weight of authority, support the proposition that where one orders an article of a manufacturer and designates a particular kind of material, out of which the article is to be made in whole or in part, such material not being made by the manufacturer himself, if the manufacturer uses the designated material the law will not imply a warranty as to its quality or fitness unless it be shown that the manufacturer failed to use reasonable and ordinary

care in selecting it. The rule is thus stated by Mr. Benjamin:
" Where a known, defined and designated article is ordered
of a manufacturer, although it is stated to be required by the
purchaser for a particular purpose, still if the known, defined
and designated article be actually supplied there is no war-
ranty that it shall answer the particular purpose intended by
the buyer." Benjamin on Sales, Sec. 657, citing Chanter v.
Hopkins, 4 M. & W. 399; Olivant v. Bailey, 5 Q. B. 288,
and numerous other English and American cases. See also
on the subject generally, Albany Law Journal of October 11,
1884.

In Hoe v. Sanborn, 21 N. Y. 552, the defendant purchased
of the manufacturer a quantity of circular saws, one of which
proved to be worthless by reason of a defect in the iron of
which it was made. The seller warranted the saws to be
" good saws and of good quality." In a very interesting
opinion by Mr. Justice Selden, in which he discusses the basis
upon which implied warranties rest, arguing that they are
based upon the knowledge of the seller either actual or im-
putable to him by law as to the quality of the thing sold, he
states as the result of his investigations the rule to be this:
" The vendor is liable for any latent defect not disclosed to the
purchaser arising from the manner in which the thing was
manufactured; and if he knowingly uses improper materials
he is liable for that also, but not for any latent defect in the
material which he is not shown and can not be presumed to
have known."

This decision, it will be noticed, was in a case where the
particular kind of material had not been designated by the
person giving the order for the saws, and yet it was held that
there was no implied warranty that the material of which the
saws were made was free from latent defects, in the absence
of proof that the vendor knew or might have known, by the
exercise of reasonable care, of such defects; that such warranty
extended only to an undertaking by the vendor that the saws
were free from any defects resulting from their improper con-
struction.

In the subsequent case of Dounce v. Dow et al., 64 N. Y.

Shoenberger v. McEwen.

411, the case of Hoe v. Sanborn is cited with approval. But a case entirely analogous in its facts to the present, is Cunningham v. Hall, 4 Allen, 268, which was a suit against a shipbuilder to recover damages for a breach of contract in building and completing a ship, which, when partially built, the plaintiff agreed to purchase. It was mutually admitted by the parties, that upon a true construction of the contract, which had been negotiated through the medium of a written correspondence, the defendant was on the one hand bound and on the other entitled to use pine plank in planking the ship, and that pine plank were used for that purpose. Upon the trial the plaintiff introduced evidence tending to show that the vessel began to leak immediately upon sailing, and that the leak continued to increase until her arrival at the port of destination, when they were found to be so defective as to require that they should be taken out and replaced by new. The defendant was allowed to introduce evidence tending to show that pine planks are subject to latent defects, called "heart shakes," formed in pine trees during their growth, and that it is sometimes impossible to discover these defects by the exercise of reasonable care and skill in adopting and fastening such planks to the frame of a ship.

The court below instructed the jury that by the terms of the contract the materials to be used were to be reasonably fit and proper for such a ship, and that this meant that they should contain no defects which could be discovered by the exercise of reasonable care and skill, but did not extend to natural defects in timber which are incident to its process of growth, and which can not be discovered by the exercise of such skill and care. This ruling was approved by the Supreme Court on appeal. In delivering the opinion of the court, Merrick, J., said: "It is undoubtedly now a well settled rule that if an article be ordered of a manufacturer for an especial purpose or a particular use, and he agrees to furnish it, and nothing is said by the parties as to the material of, or the manner in which it shall be made, there is an implied warranty on his part that it shall be fit for that purpose * * *. But if an article or fabric, in the particular line of his profession,

be ordered of a manufacturer for a special and designated purpose, and the parties agree that it shall be constructed of a certain kind of material, but the selection of the particular articles to be used and the way and manner of using and adapting them to the fabric are left to the choice and judgment of the latter without any special stipulations relative thereto, he will not in that case be liable for any loss or damage which may result from the imperfection of, or natural defects in, that kind of material.

" If the defendant, in his contract with the plaintiffs, had simply agreed that he would finish and complete the ship then on the stocks, and deliver it so finished to them at a stipulated price, there would have been an implied warranty on his part that it should be, both as to the workmanship and materials used in its construction, fit for the service for which it was sold. But the contract was, in fact, modified by a stipulation that it should be planked with pine plank.

"Under this modification, what would otherwise have created a general liability, the defendant was bound only to use reasonable care and skill in the selection and preparation of that kind of plank, and they could afterward only hold the defendant responsible for damages resulting from his failure to exercise reasonable skill and care in the selection of the plank which he used." The court cites with approval Hoe v. Sanborn, *supra*, and other cases to which it is unnecessary to here refer.

In Beck v. Sheldon, 48 N. Y. 365, it was held that where a manufacturer of goods which are known in the market, and the different qualities distinguished by numbers, contracts to sell and deliver goods from his factory of certain numbers, in a suit upon the contract it is not material whether the goods delivered are of equal or inferior quality to those of corresponding numbers manufactured at other factories, or whether or not they are merchantable. If they are the numbers contracted for as manufactured at the contractor's factory the contract is fulfilled.

A leading English case on the subject of implied warranties is Jones v. Just, 3 Q. B. 197, referred to by Mr. Benjamin,

in which the court, upon an extended review of the authorities, classified the cases on the subject, and one class is where a defined article is ordered of a manufacturer, although it is stated to be required for a designated purpose, if the thing ordered be furnished, there is no warranty that it shall answer the purpose intended by the buyer. See cases there cited. See also Kellogg Bridge Co. v. Hamilton, 110 U. S. R. 108, where is found at least an indirect recognition of the same principle.

Numerous other cases of like import to the foregoing might be referred to, but as they are cited in those cases it is unnecessary to refer to them here. Suffice it to say that in such examination as we have been able to make we have found no cases in conflict with those above cited.

In the present case the plaintiff used the brand of iron agreed upon, and tested the boilers by hydrostatic pressure to 125 pounds to the square inch, as stipulated in the contract. From an inherent defect in the iron caused by improper rolling when made, and which only developed by use, the boiler proved defective. The plaintiff appears to have used all reasonable care and skill in selecting the iron, and was guilty of no fraud. Under this state of facts we are of opinion that the court below erred in holding and instructing the jury that the plaintiff was liable as upon an implied warranty.

The judgment must be reversed, and the cause remanded for a new trial.

Reversed and remanded.