# City of Elgin v. George K. Shoenberger.

1.   CONTRACTS—*For New Apparatus for a Special Purpose—Who Takes the Risk.*—Where a newly devised apparatus is constructed by the designer for a special use by a customer who can not be presumed to have any knowledge of its adaptability to that use, it would reverse the usage of business for the customer to take the risk that the apparatus will suit his purpose.   The contractor takes the risk.

2.   ASSIGNMENT—*Of Contract Rights of Contracting Parties.*—Where a party contracts with a city to furnish materials and perform labor in constructing a filtering plant, and assigns the contract to another party, the city has no concern with differences between the assignor and assignee of the contract and is not liable to be called into chancery concerning such disputes.

**Bill for Account and Cross-bill.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding.   Heard in this court at the March term, 1895.   Reversed and remanded with directions.   Opinion filed June 24, 1895.

CLIFFORD & MORE, attorneys for appellant; EUGENE CLIFFORD, corporation counsel.

OLIVER & MECARTNEY, attorneys for appellee.

MR. JUSTICE GARY DELIVERED THE OPINION OF THE COURT.
This case was commenced by a bill filed by Edward H. Riddell, who had no case against anybody, making the appellant and appellee parties defendant.   The appellee filed a cross-bill upon which the decree was entered, the original bill being dismissed for want of equity.   The controversy grows out of a contract and specifications hereinafter set out in full, which contract was assigned to the appellee by Riddell, and the appellee performed it as such assignee.
The contract and specifications are as follows:
" This contract, entered into this sixteenth day of January, A. D. 1888, by and between the city of Elgin, Kane county, Illinois, through its Board of Water Commissioners as party of the first part, and E. H. Riddell, of Chicago, county of Cook, Illinois, party of the second part.

Witnesseth, that for and in consideration of the payments hereinafter mentioned, to be made by said first party to said second party, said second party hereby covenants and agrees to make, furnish, deliver, erect on foundations to be prepared by him, and complete, and connect with the water mains and the drains in the filter room of the pumping station of the city water works of said city of Elgin, a complete filtering plant, consisting of six (6) steel filters, each ten (10) feet in diameter, in accordance with the specifications for same, which are hereto annexed and marked 'Exhibit A,' and which are made a part of this contract, and to put the said filtering plant, before acceptance thereof by said city, into proper and acceptable condition for regular and successful operation.

That said second party agrees to complete said filters and to tender them to said city for acceptance on or before February 28, 1888, and to protect said city from, and act as defendant in all suits for damages claimed for infringement of patents, and also for damages from other causes, during the construction of the work herein contemplated.

That said second party agrees to furnish to said first party, at any time said first party shall order them, within three (3) years from the date of this contract, provided said second party shall, at that time, be in the business of making filters, such additional filters of the same kind, size, character and design as those herein mentioned, and at the rate of $2,100 each, under the terms and conditions herein specified and agreed upon.

It is further agreed that the party of the second part hereby guarantees the perfect working of the said filtering plant, so far as the mechanical construction is concerned, for the term of one year from the date of acceptance, and that he will make, at his own cost and expense, all repairs needed during that period which are due to any inherent defects in the work.

For and in consideration of the proper and satisfactory completion of the work contemplated, and the fulfillment of the terms and conditions of this contract by said second

party, said first party covenants and agrees to pay to said second party, his heirs, successors or assigns (which amount said second party agrees to accept as full payment of the work contemplated by this contract) the sum of $12,500 in good and current funds, and in the following manner provided :

First payment of six thousand dollars ($6,000) to be made in five days after the next regular meeting of the city council, after the filters are delivered in the buildings of the city water works.

Second payment: When the filters and their appliances are completed and ready for use, or as soon thereafter as possible, a preliminary test of them shall be made, and upon their standing such tests to the satisfaction of the first party, then a partial payment of four thousand dollars ($4,000) shall be made to said second party within five days after the next regular meeting of the city council.

Final payment: After the filters have been tested for not less than sixty (60) days, and have worked to the entire satisfaction of the party of the first part, the final payment of two thousand five hundred dollars ($2,500) shall be paid to the party of the second part, within five days after the next regular meeting of the city council.

Witness our hands and seals the day and year first above written.

GEO. P. LORD,    [SEAL.]<br>
President Board of Water Commissioners.<br>
E. H. RIDDELL.    [SEAL.]

SPECIFICATIONS FOR FILTERING PLANT.

The filters shall be six (6) in number. The diameter of their shells shall be not less than ten (10) feet, and the height not less than eight feet.

The contractor shall furnish all material, tools, labor, etc., needed to erect and complete the filtering plant, foundations included, and connect them with the mains and the drains in the filter-room of the city water works pumping station, and none of the filtering plant and its connections save

the force mains and the drains above mentioned are to be furnished by the city.

The plant, when tendered to the city for acceptance, must be complete in every particular and in condition for and ready for regular and constant working, and each filter must be furnished with a suitable and proper bed of gravel, sand and hard coke.

The shell of each filter must be made of homogeneous, mild steel, not less in thickness than nine-sixteenths (9-16) of an inch.

The heads will be not less in thickness than three-fourths (¾) of an inch, and they must be well and securely stayed by steel rods passing through both heads of the same filter and through broad washers supporting the heads.

Double-rivet all vertical seams and the seams in the head-stand between the heads and body of the filters. The shell or body of each will be made up of not more than two sheets if possible

Plane all exposed edges of plates to a bevel and caulk with a round-nosed tool.

Provide man-hole in shell and reinforce each opening with heavy frames.

The diameter of the inlet and outlet pipe will be not less than seven (7) inches, and that of the overflow pipe not less than eight (8) inches. Provide all necessary valves, and furnish and set a gauge with four-inch dial on each inlet and outlet pipe.

All piping will be heavy, lap-welded wrought iron pipe, with a sufficient number of bolt-and-flange joints to admit of disconnecting easily.

Each filter will be provided with a radial-armed washer and distributer, with hydraulic cylinder for moving the same, and with automatic stop device for regulating the motion of the washer.

Each filter and all the connection must be tested to and remain tight under a water pressure of one hundred and forty (140) pounds per square inch, and must be capable of working safely and satisfactorily under a pressure of one hundred (100) pounds per square inch.

The foundation will be of hard burned brick laid in strong cement mortar or of concrete made of Portland cement.

The whole must be done subject to the approval of the engineer, and will be tested by him, for acceptance by the city.

Each filter will be capable of filtering and delivering, bright and clear, not less than two hundred and fifty (250) gallons of Fox river water per minute at any condition of the river. The city reserves the right to run the filters for any length of time up to sixty (60) days, if necessary, in order to make satisfactory and conclusive test of their efficiency and their ability to render the water bright and clear.

The contractor will furnish acceptable coagulating apparatus, connected and ready for working, sufficient in capacity for eight (8) filters of the size specified herein.

All materials used must be the best of their respective kinds, and the whole job must be done in a proper and workmanlike manner.

Chester B. Davis,

Consulting Engineer."

The appellant admits that $419.57 is due to the appellee, and we allow $75 more for a tool, which the appellant needed and the appellee furnished, without inquiring too curiously into the authority of the city servant who ordered it. We make these figures subject to correction. E. & O. E.

The decree was for $3,628.98, which was arrived at by allowing to the appellee extras to the amount of $2,432 exclusive of the tool, and nearly three years' interest from the date of the master's report.

To go over in detail the items allowed as extras would take much space, and it is unnecessary to do so, for the reason that they all stand upon the same false hypothesis, viz., that the appellee, succeeding to the right of Riddell, was bound only to a " mechanical construction " of the work described in the specifications, and not at all for the sufficiency of the filters, as so constructed, to endure and do the

work they were intended for.  It was the theory of the master that the doctrine of Shoenberger v. McEwen, 15 Ill. App. 496, and not of Lake View v. Ritchie, 134 Ill. 203, governed in this case.

Riddell designed the filters.  The plans were prepared under his supervision.  He and the appellee had put in a filtering plant at Joliet, in principle like the one in controversy, but in detail so unlike the latter, that the appellee as a witness testified that "it was to be as near cost to Elgin as possible on account of being the first plant."  *  *  *  " We all expected to do a big filter business."

The plant was not a known article in commerce which a customer may order by name, as in Chanter v. Hopkins and like cases (Benj. on Sales, 57), and takes the risk that it may not suit his purpose; but it was a newly devised apparatus to be constructed by the designer for a special use by a customer who can not be presumed to have any knowledge of its adaptability to that use.  It would reverse the usage of business for the customer under such circumstances to take the risk.  It is true that the contract was to make, etc., "in accordance with the specifications," but it was also to put the plant "into proper and acceptable condition for regular and successful operation," and there are several other sentences well calculated to mislead, if they do not put the risk of the plant as a whole, altogether upon Riddell.

We hold that the risk was upon him.  The city was never liable to be called into chancery upon this contract. It had no concern with the quarrel between Riddell and the appellee.  If the appellee was likely to wrong Riddell, a notice to the appellant would doubtless have stopped all payments.

The assignment by Riddell to the appellee gave the latter no standing against the appellant in a court of equity. Chi. & N. W. Ry. v. Nichols, 57 Ill. 464.  But there has been an expensive litigation, and what should be the result, ascertained.

The appellant should not be charged with interest, nor saddled with costs.  It has been always ready to do equity.

The decree of the appellee against the appellant is reversed and the case remanded with directions to enter another decree in favor of the appellee against the appellant for $494.57, but without costs.

The appellant will recover its costs in this court from the appellee.

Mr. Justice Shepard dissents.