## JAMES D. THORNDIKE *vs.* JESSE A. LOCKE.

One who has sold shares in a corporation, with a written agreement to take back, at the expiration of a specified time, all of them which the purchaser may then own, and to pay therefor a stipulated price, is liable to pay the full stipulated price, after the expiration of the time, and a tender of the shares then remaining unsold by the purchaser, both before action brought and at the trial thereof, and a refusal by the vendor to receive them.

CONTRACT upon a written agreement between the parties, dated May 16, 1864, the material portion of which is as follows:

" Whereas said Locke has this day assigned and transferred to said Thorndike the interest in certain gold mining property in Colorado, which he, the said Locke, purchased of L. L. Tower, being one undivided one-thirtieth part of the property to be owned by the following companies, namely, Caledonia, Washington, Wallace and Suffolk, when organized; now, therefore, in consideration of the agreements hereinafter contained, the said Locke hereby agrees to purchase of said Thorndike, at any time after twelve months from this date, all the stock of the original purchase he may own at that time, in all of the above named companies, and pay him for the same the whole amount, principal and interest, that the same has at that time cost said Thorndike, reckoning his receipts and expenditures up to that date.

" And the said Thorndike, in consideration of the above agreements, hereby agrees to assume and pay [certain amounts stipulated for in detail], and to keep a just and true account of all his receipts and expenditures on account of said purchase, and the stock in the above named companies; and use his best endeavors to sell the stock at the best prices he can obtain for them and, as soon as he is reimbursed principal and interest of all

moneys expended on account of said purchase, and ten per cent. commissions on the same, he will assign and transfer to said Locke, or his assigns or legal representatives, one half of all the stock he then holds in either of and all of the above named companies, and pay over one half of all the money he may have received on account of sales of the same, over and above his expenditures, interest, and ten per cent. commissions."

At the trial in the superior court, before *Ames*, J., it was admitted that the plaintiff had paid seven thousand dollars under the agreement; and the plaintiff testified that three days before the year was out he asked the defendant, " What action are you going to take about our contract? The money is due and I want it paid." The defendant replied, "Wait awhile, you will want to hold the stock. If you will wait four months, I will give you the best suit of clothes you ever had, and a gold-headed cane." The plaintiff said, " No. I am ready to transfer as soon as you are ready to pay." The day after the year expired, they met again, when the defendant offered to give his notes at four months, admitting the plaintiff's claim. And frequent interviews and conversations occurred between them, in all of which the defendant expressed himself as ready to take the stock as soon as he could, and the plaintiff said he was always ready and willing to make the transfer. In one of the companies it was found necessary to issue bonds, of which the plaintiff, by the defendant's advice, took some, paying therefor the sum of three hundred and fifty dollars, and upon these the plaintiff had received twenty-five dollars for interest. No certificates of shares were ever issued to the plaintiff, but he was credited with the shares; and he made no written transfer to the defendant, but invited him to go with the plaintiff to make the transfer, and offered him the bonds and agreement, and a statement of the account.

The plaintiff offered in court to transfer the shares and bonds to the defendant.

The defendant denied some of the above statements of the plaintiff, and contended that on this evidence there was no sufficient tender of performance by the plaintiff, and that, if the plain-

tiff was entitled to recover at all, it could only be damages for the breach of the defendant's contract, the measure of which would be only the difference between the amount of the plaintiff's account and the value of the shares remaining in the plaintiff's hands.

The judge ruled that an offer by the plaintiff to fulfil the contract on his part, and to transfer the property, coupled with a present ability to do so, was a sufficient tender, without the actual execution and production of a written transfer; and that, if the plaintiff had properly tendered performance on his part, and renewed the offer at the trial, and expressly disclaimed any right or intent to hold the property as against the defendant, he would be entitled, if he should prevail, to recover the amount of his payments, with interest, deducting such sum as he had received on the bonds.

The jury found for the plaintiff accordingly, and the defendant alleged exceptions.

*T. M. Hayes*, for the defendant.

*G. H. Preston*, for the plaintiff.

By THE COURT. The ruling of the court as to damages seems to have been in precise accordance with the stipulations of the defendant that at the expiration of the year he would take back all the stock which the plaintiff had in his hands remaining unsold, and pay him therefor the whole amount, both principal and interest, which the stock had then cost the plaintiff. This accords with the doctrine laid down in *Thompson* v. *Alger*, 12 Met. 443. The original relation of the parties at the time the contract was made had changed. The plaintiff had parted with his money on the faith of the defendant's agreement to repay it at the expiration of the year. Unless he recovers principal and interest paid by him, he fails to get an indemnity for the defendant's breach of his contract.          *Exceptions overruled.*