[No. 19322.   Department Two.—July 30, 1894.]

JOHN H. GAY, JR., APPELLANT, v. D. D. DARE ET AL., DEFENDANTS. S. G. HAVERMALE, RESPONDENT.

CORPORATIONS—CONTRACT FOR PURCHASE OF STOCK—INSOLVENCY OF NATIONAL BANK—PAYMENT OF ASSESSMENT.—Where a subscriber to the stock of a national bank, which afterwards became insolvent, had agreed with other stockholders that they would take the stock from him at the end of a year at the price paid for it, at his option, for the amount of his investment, and pay him ten per cent interest on the investment, they are bound to take the stock at the time agreed, upon notice of the option; and if they neglect and refuse so to do, they

become liable not only for the amount of principal and interest as agreed, but also for the amount of an assessment levied by the controller of currency of the United States upon the stock of the insolvent bank to pay its debts, which the subscriber was compelled to pay, and did pay, to the receiver of the bank.

ID.—PURCHASE OF STOCK—ASSESSMENTS AFTER BREACH OF CONTRACT.— One who contracts to purchase stock on a given date must take it at the time indicated in his contract *cum onere*, and if he fails to do so he is liable not only for the purchase price and interest, but also for all assessments levied upon the stock after his breach of the contract, which his vendor is compelled to pay thereon.

ID.—OPTION TO RETURN PURCHASED PROPERTY—RESCISSION OF CONTRACT.— Where a purchaser of chattels pays the price, and stipulates that if he so desires he may return the property and receive back the price paid upon the exercise of the option, a rescission of the contract takes place, and the title at once vests in the original vendor.

ID.—TENDER OF STOCK—REFUSAL OF PAYMENT—TRUST—REIMBURSEMENT OF EXPENSES.—Upon a tender of stock purchased, where the purchaser has the option to return the stock and receive reimbursement of the price with interest from the vendors, and they have refused to accept the stock and pay the money agreed, the purchaser holds the stock as trustee for the vendors, and as such trustee is entitled to reimbursement of all necessary expenses for which he becomes liable and has paid by virtue of his position as such trustee.

ID.—BREACH OF CONTRACT—MEASURE OF DAMAGES—ASSESSMENT UPON STOCK—PROXIMATE RESULT.—Under section 3300 of the Civil Code, which provides that for the "breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom," an assessment upon stock agreed to be purchased which the vendor is compelled to pay as a consequence of the refusal of the defendants to take the stock at the time they had agreed to do so is a proximate result of their refusal.

APPEAL from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion.

*Hunsaker, Britt & Goodrich,* for Appellant.

*Wellborn, Stevens, & Wellborn,* and *Clarence L. Barber,* for Respondent.

SEARLS, C.—The California National Bank of San Diego was a national banking corporation organized under the laws of the United States, and having its place of business at San Diego, California.

On the twentieth day of January, 1891, plaintiff subscribed for one hundred shares of the capital stock of said corporation, and paid therefor the sum of twelve thousand five hundred dollars.

In consideration of plaintiff's subscribing for and payment of said sum of money for said stock, the defendants herein jointly and severally agreed with him in writing that in the event of said plaintiff "wishing to sell the said stock, at the end of one year from the date of issue, we (the defendants) will take said stock at the price paid for it, and allow the said John H. Gay, Jr. (plaintiff), ten per cent on the investment of twelve thousand five hundred dollars for the time said money was invested. Interest payable from the time the money is paid in. Said John H. Gay, Jr., agrees to give the undersigned four months' notice of his desire to dispose of said stock.

[SIGNED]     "D. D. Dare.<br>
"S. G. Havermale.<br>
"J. W. Collins."

On the fifteenth day of September, 1891, plaintiff wishing to sell said stock in pursuance of the terms of said agreement, gave to the defendants notice of his desire to dispose of said stock to them pursuant to the terms of said agreement, and four months thereafter, on, to wit, January 20, 1892, plaintiff offered to return said stock to defendants, and demanded of them performance of said agreement, and that they take and pay him for said stock said sum of twelve thousand five hundred dollars and interest from January 20, 1891, at ten per cent per annum, which defendants refused to do.

After plaintiff gave the defendants the four months' notice of his desire to sell the stock to them, but before the tender thereof and demand, as above stated, viz., on the twelfth day of November, 1891, the California National Bank of San Diego aforesaid became and was, and ever since has been, insolvent.

Plaintiff thereafter brought this action to recover the

twelve thousand five hundred dollars and interest, tendered and deposited in court the stock, etc.

Defendant Dare was absent from the United States and was not served with process. Defendant Collins was served with summons, made default, and thereafter died. Defendant Havermale answered.

Subsequent thereto the controller of the currency of the United States, on the fifteenth day of May, 1892, levied an assessment upon the stock of the insolvent bank to pay its debts, which amounted to ten thousand dollars upon the one hundred shares held by plaintiff, which sum he was compelled to pay and did pay to the receiver of the bank.

Thereafter plaintiff filed a supplemental complaint, setting out the levy of said assessment and the payment thereof by him, and sought to recover the same from defendants, in addition to the sum of twelve thousand five hundred dollars and interest.

Defendant Havermale demurred to the supplemental complaint, which demurrer was sustained by the court, and at the trial plaintiff had judgment for twelve thousand five hundred dollars and interest, but it was adjudged that the plaintiff take nothing in the cause of action set out in his supplemental complaint.

Plaintiff appeals from so much of the judgment as adjudged that he take nothing by reason of the facts set forth in his supplemental complaint on file in said action. The case comes up on the judgment-roll, without a statement or bill of exceptions.

It is quite apparent from the agreement that the true intent of the parties to it was that if the plaintiff at the end of one year from the date of the purchase desired it, the defendants would repurchase the stock and repay his money with interest at ten per cent. The practical effect of this was to treat the sum paid by plaintiff as an investment upon which he was to have interest, if he so desired, and gave the four months' notice prescribed in the agreement. This he did, as he had a right under the agreement to do, four months before the expiration

of the year. The contention of respondent that plaintiff's notice was premature cannot be maintained.

The agreement of defendants was to take the stock at the end of *one year*, if plaintiff desired to sell it. The agreement of plaintiff was to give *four months' notice* to defendants if he desired to sell. This he could do four months before the expiration of the year.

The duty of defendants under their agreement was to take and pay for the stock when after the four months' notice it was, on the twentieth day of January, 1892, tendered to them and payment demanded. Not having done so, the question is, can plaintiff recover as damages the assessment which was thereafter, and on the fifth day of May, 1892, levied upon said stock, and which he was compelled under the statutes of the United States to pay, and did pay?

"For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which in the ordinary course of things would be likely to result therefrom." (Civ. Code, sec. 3300.)

The vendor of personal property, in a suit against the vendee for not taking and paying for the property, has the choice, ordinarily, of either one of three methods to indemnify himself:

" 1. He may store or retain the property for the vendee, and sue him for the entire purchase price.

" 2. He may sell the property, acting as the agent for this purpose of the vendee, and recover the difference between the contract price and the price obtained on such resale.

" 3. He may keep the property as his own, and recover the difference between the market price at the time and place of delivery and the contract price." (*Dustan* v. *McAndrew*, 44 N. Y. 72; *Dwiggins* v. *Clark*, 94 Ind. 49; 48 Am. Rep. 140; Sedgwick on Damages, 8th ed., sec. 753.)

The plaintiff here adopted the first of the methods above set forth, and retained the property for the vendees until suit was brought, when he deposited it in court for their benefit.

This he had a right to do. Indeed, in all that class of cases where a purchaser of chattels pays the price, but stipulates that after a trial of the property purchased, or at some future time, he may, if he so desires, return the property and receive back the price paid, it is usually held that it does not amount in law to a contract to repurchase, but is, upon the exercise of the option, a rescission of the contract, and the title at once vests in the original vendor. (*Laubach* v. *Laubach*, 73 Pa. St. 387; *Thorndike* v. *Locke*, 98 Mass. 340.)

Be this as it may, it was the duty of the defendants, on the twentieth day of January, 1892, to receive the stock and repay plaintiff his money with interest, which they refused to do.

One of the results of such refusal was that plaintiff was compelled to pay an assessment of ten thousand dollars, subsequently levied upon the stock.

Upon a tender by plaintiff and refusal to accept and pay by the defendants, the former held the stock as the trustee for defendants, and as such trustee he was entitled to all necessary expenses for which he became liable and paid by virtue of his position.

The assessment was a consequential damage, it is true, which arose from the stock standing in the name of plaintiff, but it was a consequence of the refusal of the defendants to take the stock at the time they had agreed to do, and it was a proximate result of their refusal.

The vendor of chattels in cases where the vendee refuses to accept and pay for them pursuant to agreement, and who thereafter holds them as the agent or trustee of the vendee, not only may but must at his peril take care of and protect the property for his principal or beneficiary, and is entitled to compensation therefor as damages consequential of the breach of the contract. This doctrine has been applied to the storage

of grain and other personal property, to the feed and care of animals, and to various other expenses incident to the nature, character, and condition of the property. (*McCracken* v. *Webb*, 36 Iowa, 551.)

In such cases the loss is the natural result of the breach of the contract, and is so near in its casual sequence to the injury or wrong that the law takes it in the account in its estimate of what is just compensation.

Spelling on Private Corporations, at section 501, says: "After a call has been made the corporation has a cause of action against the shareholder at the time of making it; and this cause of action cannot be extinguished except by its consent. But between the immediate parties the transferer has recourse against his immediate transferee for such calls and assessments as he has been compelled to pay pending registration," citing *Castellan* v. *Hobson*, L. R. 10 Eq. 47. The case cited fully sustains the doctrine enunciated in the text.

Were the rule otherwise, one who contracts for the purchase of stock in a corporation to be delivered in the future, upon which he is certain assessments will be levied, may, by violating his contract to receive the stock, devolve upon the vendor the necessity of paying the assessment, and then, if the stock has not been sold, tender payment and demand his stock; or, where payment has been made and the stock delivered, he may, by neglecting his manifest duty to have a transfer made upon the books of the corporation, compel the transferor to pay future assessments.

Such is not the law. One who contracts to purchase stock on a given date must take it at the time indicated in his contract *cum onere*, and if he fails to do so he is liable not only for the purchase price and interest, but for all assessments levied upon the stock after his breach of the contract which his vendor is compelled to pay thereon.

It follows that the court below erred in sustaining the demurrer to the supplemental complaint, and that portion of the judgment appealed from should be reversed

and the cause remanded, with directions to the court below to overrule the demurrer of defendant Havermale to the supplemental complaint, with leave to answer, and that the issues tendered by such supplemental complaint be tried on the merits.

Belcher, C., and Temple, C., concurred.

For the reasons given in the foregoing opinion, so much of the judgment of the court below as is appealed from is reversed, and the cause remanded, with directions to the court below to overrule the demurrer of defendant Havermale to the supplemental complaint, with leave to said Havermale to answer, and that the issues tendered by such supplemental complaint be tried on the merits.

McFarland, J., Fitzgerald, J., Garoutte, J.