[Civ. No. 2801.   Second Appellate District, Division One.—June 25, 1920.]

# CHARLES MADISON, Respondent, v. WEYL-ZUCKERMAN & CO. (a Corporation), Appellant.

[1] SALES—PASSAGE OF TITLE—DUTY OF SELLER TO DELIVER—CONSTRUCTION OF CONTRACT.—Where a contract relating to the sale of a crop of potatoes then ready for harvesting recites that the grower "sells" the said product and that "the title thereto is hereby transferred and delivery thereof is hereby made by seller to buyer. Said product shall henceforth be deemed, in the possession of buyer, and seller shall, at his expense, and as agent of buyer, transport and load it in cars," etc., the transaction is a sale, and not an agreement to sell, and it is the duty of the seller to deliver the potatoes as provided therein, unless prevented from so doing by some act of the buyer.

[2] ID.—TENDER OF PERFORMANCE—REFUSAL OF ACCEPTANCE—EFFECT OF.—Delivery of the potatoes having been refused because they were not properly sorted, but the quantity thereof having been sufficient from which to obtain the number of sacks purchased, and the seller having offered to re-sort and redeliver them within the time specified in the contract, the refusal of the buyer to accept such tender of performance excused the seller from performance.

[3] ID.—LIEN OF SELLER—HOW ENFORCED—NOTICE—ACTION FOR DEFICIENCY.—The title to the potatoes having vested in the buyer, but the possession thereof having remained in the seller, the latter's only interest therein was his special lien thereon for the amount due from the buyer, and his right to enforce the same was like that of a pledgee of personal property as prescribed in section 3005 of the Civil Code, by a sale at public auction in the manner and upon the notice given as in sales of such property upon execution, in which event, if the proceeds were insufficient to pay the debt, an action would lie to recover the deficiency.

[4] ID.—BREACH BY BUYER—RESALE BY SELLER—NOTICE—ERRONEOUS INSTRUCTION.—In an action by the seller against the buyer for damages for breach by the buyer of such a contract of purchase, it is error to instruct the jury to the effect that it is optional with plaintiff as to the manner in which he sold the property, provided only that the sale was made in good faith and in a mode calculated to produce the best price obtainable therefor and within such time as would suffice with reasonable diligence to effect such sale, and that it was not necessary that the same should be made at public auction or any notice given of the time and place of the sale.

[5] ID. — REFUSAL OF BUYER TO ACCEPT — MANNER OF RESALE BY SELLER.—The vendor of personal property which the vendee has wrongfully refused to accept and pay for may, under section 3049 of the Civil Code, sell the property and bind the vendee by the result of the sale only where the sale is made in the manner prescribed by section 3005 of said code for the sale of property by a pledgee. (Opinion of the supreme court on denial of hearing.)

APPEAL from a judgment of the Superior Court of Tulare County. M. L. Short, Judge. Reversed.

The facts are stated in the opinion of the court.

Shelton & Levy for Appellant.

Murry & Knupp for Respondent.

SHAW, J.—This action, as shown by the complaint, was to recover damages for the defendant's alleged breach of a contract.

In accordance with the verdict of the jury which tried the case, judgment was entered for plaintiff, from which defendant appeals.

[1] On June 19, 1917, at which time plaintiff had in the ground a crop of potatoes then ready for harvesting, he and defendant entered into a written contract as follows:

"Weyl-Zuckerman & Co., a corporation, purchases, and Chas. Madison sells the following product, to be sound, merchantable, of quality as follows on arrival at Porterville, to wit: 600 sks. Early Rose Potatoes—free from scab and fork holes.

"If any thereof is not of specified quality, buyer may, at its option, restore title of such part to seller and return same, expense of sorting and returning to be borne by seller. Said product is located as follows: 4½ West of Porterville, Owner and Grower—Chas. Madison and is hereby identified as the subject matter of this sale, and the title thereto is hereby transferred and delivery thereof is hereby made by seller to buyer. Said product shall henceforth be deemed, in the possession of buyer, and seller shall, at his expense, and as agent of buyer, transport and load it in cars at Porterville as follows: to be delivered on or before June 30, 1917."

Analyzing this contract, it appears therefrom that plaintiff sold the potatoes so grown to defendant, and by express terms of the contract it was vested with complete title thereto, which plaintiff, as agent of such owner, was to haul and load upon cars at Porterville, at which time the balance of the purchase price was to be paid. In making the sale plaintiff warranted that the potatoes sold, consisting of six hundred sacks and weighing approximately sixty-five thousand pounds, should, upon delivery, be sound and merchantable, free from scab and fork holes; and, in addition to any rights accruing to defendant to recover damages for breach of the warranty, defendant in lieu thereof, at its option, was given the right, at plaintiff's expense for re-sorting and shipping, to transfer back to him the title to such part thereof as did not measure up to the warranty. In other words, the transaction *was a sale; not an agreement to sell.* Defendant was the owner of the potatoes purchased upon a warranty as to quality, and plaintiff had assumed the duty, as defendant's agent, to harvest and load them upon the cars at Porterville on or before June 30th. Until such delivery, and in the absence of a revesting of the title, plaintiff held the property in his possession as agent of defendant. Thus construing the contract, it was plaintiff's duty to deliver the potatoes as provided therein, unless prevented from so doing by some act of defendant.

[2] The potatoes were not delivered, the reason therefor being that, on June 28, 1917, after they were taken from the ground and assembled in sacks, defendant sent its inspector to examine them, who, after such examination, pronounced them unmerchantable, claiming that they had not been properly sorted and some of the sacks contained potatoes that were "sticky." Notwithstanding the fact that some of the sacks contained small potatoes, rendering them unmerchantable, the quantity thereof was sufficient from which to obtain the number of sacks purchased by defendant, and plaintiff then offered to re-sort and deliver them within the time specified in the contract. The inspector left plaintiff, saying that he would have to 'phone defendant, and later in the day said to him that defendant had instructed that "if there was any bad potatoes not to take any." Clearly, this was a refusal of defendant to accept the performance

tendered by plaintiff, and under sections 1440 and 1515 of the Civil Code, and since upon such notice of repudiation and refusal to accept performance, the actual delivery thereof would have been futile, he was excused from such performance. (*Remy* v. *Olds*, 88 Cal. 537, [26 Pac. 355].)

No further communication was had between the parties until July 2d, when plaintiff, recognizing that by the terms of the contract title to the potatoes had vested in defendant, wired it as follows: "Under contract dated June 19th I now have in my possession sixty-five thousand pounds of potatoes belonging to you wire instructions as to delivery immediately or I will sell the potatoes for your account in order to prevent loss"; to which defendant replied: "You are not holding any potatoes for this company as potatoes purchased were rejected by Engelhardt account not up contract grade they contained small cut sunburned and unmerchantable stock therefore we rejected." On July 5th plaintiff, by his attorney, wired defendant as follows: "I am still holding your potatoes you did not reject potatoes on account of scab or fork holes demand balance of purchase price. Potatoes are all good merchantable potatoes and not sunburnt your only reason for rejecting is fall of purchase price will sell potatoes and hold you for all damages unless you want to come through." Thereafter plaintiff, at private sale and without further notice to defendant, sold the potatoes to other parties at a price much less than the balance of the purchase price which defendant had obligated itself to pay. The evidence received on the part of plaintiff, and as found by the jury, showed that in quality the potatoes complied with his warranty and, since by reason of defendant's notice that it would not accept them, he was excused from making delivery thereof, the contract imposed upon defendant the obligation to pay the price in consideration of which title was vested in it. Plaintiff, however, did not stand upon the terms of the contract and insist upon payment of the balance of the purchase price of the goods, which was the detriment caused by defendant's breach of the agreement. (Sec. 3310, Civ. Code.) On the contrary, when defendant, by its act in the nature of a rescission, refused to accept performance of the contract on plaintiff's part, he by his act in exercising the rights of

owner and selling the property title to which admittedly was vested in defendant, at private sale and without notice to defendant, thereby assented to the rescission.

[3] Assuming, however, there was no rescission, in which event title remained vested in defendant, then, since as vendor plaintiff had possession of the property when the price became due, his only interest therein, as provided in section 3049 of the Civil Code, was a special lien thereon for the amount due from defendant, and his right to enforce the same was like that of a pledgee of personal property as prescribed in section 3005 of the Civil Code, by a sale at public auction in the manner and upon notice given as in sales of such property upon execution, in which event, if the proceeds were insufficient to pay the debt, an action would lie to recover the deficiency. Plaintiff had no right to enforce his lien by selling the defendant's property at private sale without notice, and, as said by this court in *Bennett* v. *Potter,* 16 Cal. App. 183, [116 Pac. 681], wherein the facts were similar to those here involved: "If the automobile belonged to defendant and title thereto had passed, as alleged by plaintiff and found by the court, then the act of plaintiff in selling it amounted to a conversion of defendant's property, damages for which might be recovered." Respondent cites a line of cases, among which are *Cuthill* v. *Peabody,* 19 Cal. App. 304, [125 Pac. 926], *Gay* v. *Dare,* 103 Cal. 454, [37 Pac. 466], and *Lillie* v. *Weyl-Zuckerman & Co.,* 45 Cal. App. 607, [188 Pac. 619], to the effect that in executory contracts for the purchase of personal property the vendor, where the purchaser refuses to take and pay for the property, may resort to one of three courses, namely: (1) He may store or retain the property for the vendee and sue him for the entire purchase price; (2) or keep the property as his own and recover the difference between the market price at the time and place of delivery and the contract price; (3) or sell the property, acting as the agent of the vendee for that purpose, and recover the difference between the contract price and the price obtainable on such sale. These cases, however, involved executory contracts in which the title to the property remained vested in the vendor, and the right last mentioned, which appears to have been that adopted by the plaintiff in this case, cannot be invoked in cases where the purchase is complete and the title to the

property sold vested in the defendant.   **[4]**   Hence the trial court erred in instructing the jury to the effect that it was optional with plaintiff as to the manner in which he sold the property, provided only that the sale was made in good faith and in a mode calculated to produce the best price obtainable therefor and within such time as would suffice with reasonable diligence to effect such sale, and that it was not necessary that the same should be made at public auction or any notice given of the time and place of the sale.

The judgment is reversed.

Conrey, P. J., and James, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 23, 1920, and the following opinion then rendered thereon:

THE COURT.—**[5]**   In denying the petition of the respondent for a hearing before this court we did so upon the ground stated in the opinion of the district court of appeal that the vendor of personal property which the vendee has wrongfully refused to accept and pay for may, under section 3049 of the Civil Code, sell the property and bind the vendee by the result of the sale only where the sale is made in the manner prescribed by section 3005 of the Civil Code for the sale of property by a pledgee.   We withhold, however, our approval of the portion of the opinion of the district court of appeal which states in effect that a sale in any other manner by a vendor under the circumstances stated works a rescission, meaning thereby apparently a rescission of the contract of sale itself.   A decision of the question so presented is not necessary and we express no opinion upon the point.

Olney, J., Shaw, J., Lawlor, J., Wilbur, J., and Lennon, J., concurred.