EDWARD BECK, Respondent, *v.* FREDERICK A. SHELDON et al., Appellants.

In an action tried by the court, or by a referee, a refusal to find a material fact, of which there is legal proof, and where there is no proof to the contrary, nor proof of facts or circumstances showing its improbability, is an error of law, and if a request so to find is made and there is a refusal and exception, a proper question is presented for consideration in the Court of Appeals.

Where a manufacturer of goods, which are known in the market, and the different qualities distinguished by numbers, contracts to sell and deliver goods from his factory, of certain numbers, in an action upon the contract it is not material whether the goods delivered are of equal or inferior quality to those of corresponding numbers, manufactured at other factories, or whether they are or are not merchantable. If they are the numbers contracted for as manufactured at the contractor's factory, the contract is fulfilled.

| 48 | 365 |
| 108 | 391 |
| 48 | 365 |
| 118 | 268 |
| 48 | 365 |
| 130 | 480 |
| 48 | 365 |
| 149 | 604 |
| 48 | 365 |
| j163 | 519 |
| 48 | 365 |
| 167 | 57 |

Statement of case.

In executory contracts for the sale of personal property, if the vendee deems the article received not the one contracted for, to preserve his rights he must return it to the vendor, or notify him of his objections and offer to return it. The retention of the property, without doing this, after opportunity to ascertain the defect, is an admission that the contract has been performed.

(Argued September 29, 1871; decided January term, 1872.)

APPEAL from judgment of the General Term of the Supreme Court of the second judicial district, affirming a judgment in favor of plaintiff, entered upon the decision of the court upon trial without a jury.

This was an action to recover the balance due upon a sale of iron. On the 6th of February, 1864, the plaintiff contracted to sell and deliver to the defendants "800 gross tons Poughkeepsie foundry pig iron, at forty-five dollars per ton for No. 1, and forty-four dollars per ton for No. 2; cash on delivery at wharf at Poughkeepsie." Plaintiff was the manufacturer of iron known in the market as No. 1 and No. 2 Poughkeepsie foundry pig iron. The deliveries were to be made monthly, ending with October. The iron was all delivered and used, and all paid for, except that required to be delivered in October; none was returned or offered to be returned. The defendants insist upon damages and a deduction, on account of the poor quality of the iron delivered. Various requests were made and exceptions taken, which are stated in the opinion of the court. The justice before whom the cause was tried without a jury, found for the plaintiff for the contract price of the iron.

*W. A. Beach* for appellants. It is the duty of the trial court, when requested, to find every material fact necessary to the determination of the issues. (*Carter* v. *Shipman*, 35 N. Y., 533, 542; *Grant* v. *Morse*, 22 id., 323–325.) A refusal to find a material fact, proven by uncontroverted evidence, is reviewable here upon proper exceptions. (*Mason* v. *Lord*, 40 N. Y., 476, 484; *Putnam* v. *Hubbell*, 42 id., 106; *Marvin* v. *Inglis*, 39 How., 329; *Fellows* v. *Northrup*,

39 N. Y., 117; *Draper* v. *Stouvenel*, 38 id., 219.) An acceptance does not work an estoppel where the defect is latent. (*Hoe* v. *Sanburn*, 21 N. Y., 552.) The purchaser may protect himself by notice of the defect when discovered. (29 N. Y., 362, 363.) On sales otherwise than by samples a vendee has no right to return for breach of warranty. (*Muller* v. *Eno*, 14 N. Y., 597; *Gillespie* v. *Torrance*, 25 id., 306–310.

*John Thompson* for respondent. Findings of fact are not reviewable in this court. (*Boost* v. *Spelman*, 4 N. Y., 284; *Pratt* v. *Foote*, 9 id., 463; *Western* v. *Genesee Ins. Co.*, 12 id., 258; *Griscom* v. *Mayor*, id., 586; *Horton* v. *Brown*, 13 id., 587; *Wright* v. *Douglas*, 7 id., 564; 14 id., 310; 18 id., 573; 17 id., 31; 22 id., 323, 426; 26 id., 82; 30 id., 383; 33 id., 587; 39 id., 350.) No warranty can be implied in contract in question. (*Hargous* v. *Stone*, 5 N. Y., 86; *Wright* v. *Hart*, 18 Wend., 448; *Moses* v. *Mead*, 1 Den., 378.) Even knowledge of the agent that the iron was wanted for stove plate would not imply a warranty. (14 J. R., 316; *Prentice* v. *Dike*, 6 Duer, 220.) Nor his expressing his judgment or opinion. (20 J. R., 191; 10 Wend., 411; 22 Barb., 134.) In executory contracts, if article is not the one contracted for, the vendee must notify the vendor and offer to return. If kept and used, all defect is waived. (*Reed* v. *Randall*, 29 N. Y., 357; *Hargous* v. *Stone*, 1 Seld., 86; *Fitch* v. *Carpenter*, 43 Barb., 40; 20 Wend., 61; Parsons on Cont., 326, 327.)

HUNT, C. The questions made by the appellants are principally questions of fact. Ordinarily, these are not the subject of inquiry in this court, where the judgment has been affirmed at the General Term. The appellants' request to the judge to find certain facts was refused. These facts, they insist, were established by uncontradicte? evidence. To the refusal so to find they excepted, and ? insist before this court that such refusal constitutes a gr d of error. It is

provided by section 268 of the Code, that where there is a trial before a judge without a jury, either party may except to a decision on a matter of law arising on the trial, may make a case or exceptions, and move for a new trial at the General Term. "And either party desiring a review upon the evidence, either of the questions of fact or of law, may make a case or exceptions in like manner as upon a trial by jury, except that the judge must briefly specify the facts found by him, and his conclusions of law." If the judgment be reversed at the General Term * * * the question whether the judgment should have been so reversed, either upon questions of fact or of law, shall be open to review by the Court of Appeals. (Id., 1.) Section 348 provides that an appeal may be taken to the General Term from a judgment entered upon the report of referees or the direction of a single judge of the same court, in all cases, and upon the fact when the trial is by the court or referee.

It will be perceived that the power of this court is less extended than that of the General Term of the Supreme Court, in at least one important particular. Where there has been a trial before a referee or a judge without a jury, the case can be brought before the General Term for "a review of the evidence appearing on the trial." The "questions of fact" can then "be reviewed," that is, the decisions reached upon questions of fact by the judge or referee are open to examination or review or reconsideration by the General Term. This power is expressly denied to the Court of Appeals, except in a single case, viz., where the judgment of the judge or referee is reversed on questions of fact, and it is so stated in the judgment of reversal. (Section 268.) "In that case, the question whether the judgment shall have been reversed either upon questions of fact or of law shall be open to review by the Court of Appeals." (Id.) Where the judgment of the referee or judge has been affirmed by the General Term, or where it has been reversed on questions of law only, this court has no power to review the facts.

It has been held by the Court of Appeals in many cases

that it is an error of law for a judge or referee to find the existence of a fact of which there is no evidence. Being an error of law rather than of fact, it is reviewable in this court, and judgments are frequently reversed for the reason that material facts are found of which there is no legal proof. (*Putnam* v. *Hubbell*, 42 N. Y., 476; *Fellows* v. *Northrup*, 39 id., 117; *Draper* v. *Stouvenel*, 38 id., 219.)

A refusal to find a material fact of which there is legal proof, and of which there is no proof to the contrary, and where there are no facts or circumstances showing its improbability, is equally an error of law. If the request so to find is made, and there is a refusal and exception, a proper question is presented for consideration in the Court of Appeals. I do not find that this point has ever been distinctly decided. It has been alluded to, and it seems to me to be within the spirit of the decisions and of the Code. (*Mason* v. *Lord*, 40 N. Y., 476; *Putnam* v. *Hubbell*, 42 id., 106; *Grant* v. *Morse*, 22 id., 323; *Marvin* v. *Ingles*, 39 How. Pr. R., 329.)

The present case presents sixteen requests for findings, and thirty exceptions to the findings and to the refusals to find. A settlement of the principles in contention will dispose of a large part of these questions. The plaintiff insisted that "Poughkeepsie foundry pig iron No. 1 and No. 2" called for iron of the qualities of No. 1 and No. 2, as manufactured at that establishment; that these terms represented the comparative softness or hardness of the iron so manufactured, not an absolute quality by a fixed standard, and that it involved no statement of what it would produce when manufactured.

The defendants, on the contrary, insist that the terms used represent known market qualities of iron, and that the iron delivered was inferior to those qualities. In their answer they also insist that it was agreed that the iron should be suitable for the purposes to which they intended to apply it, to wit, the manufacture of stoves, but that it was of an inferior quality and was unfit for the manufacture of stoves.

The judge finds as a fact that the writing contains the only contract in respect to the iron and the whole of it. He further finds that the plaintiff made no warranty or representation of what sort of castings or work the Poughkeepsie pig iron would produce. These findings are sustained by the evidence. The writing speaks for itself. The evidence of Mr. Greene, the defendant, of what took place between himself and the plaintiff's agent, is much more than balanced by the evidence of the agent to the contrary, and the evidence to be derived from the plaintiff's letters, that they formed their judgment of the iron from their use of it in their manufactory. The last branch of the defense requires no further comment. The other branch is to be determined by the writing itself and by the surrounding facts. The plaintiff owned the foundry referred to. He manufactured there iron known as No. 1, and iron known as No. 2. This fact was known to the defendants. They contracted with the plaintiff for 800 tons, not of No. 1 and No. 2 iron generally, but for iron known as Nos. 1 and 2 of the Poughkeepsie furnace. Whether it was good or poor, hard or soft, would make good stove castings or poor ones, was not at all in question. Whether it was as good as the iron made at other factories, whether it was above or below the average, was not important. It was as if they had contracted with a farmer for 800 bushels of the yellow corn to be raised on his farm in a certain town, or 800 bushels of the winter wheat to be raised on a particular lot, or the apples from the trees in his orchard. Such a contract assumes that the parties know what is the character of the article to be there produced. They select a particular standard, and do not rely, either upon its merchantable character or upon its productive quality. If the particular iron, corn, wheat or apples thus to be produced is furnished to the buyer, the contract is performed. The judge found that the iron delivered was precisely the article contracted for; whether it was or was not merchantable, was therefore of no importance.

There was no contract that the iron to be furnished would

produce castings of a particular quality.   Such is the finding, based upon sufficient evidence.   This, however, is not the only cause of complaint by the purchasers.   They allege, and the judge has found, that when mixed in the proportion of two-thirds No. 1, and one-third No. 2, the result did not furnish as good stove plates as did the same mixture in a previous year.   But the seller did not agree that the result would be the same.   He did not hold forth or represent that the plates of the two years would be the same.   The buyers, it may be assumed, believed that such would be the case, but they obtained no guaranty or representation to that effect from the sellers.   The failure is, therefore, their loss, and they cannot throw it upon the seller.

It is said that the fracture showed a grain or crystallization, and a character of iron which was not sustained by its result when smelted.   So the judge finds, and such was the evidence.   He finds also that the only contract was, that Poughkeepsie pig iron Nos. 1 and 2 should be furnished, and that the pig iron, according to the contract, was duly delivered by the plaintiff to the defendants.   There was, therefore, no contract either that iron should produce particular results when smelted, or that the actual result should be the same with that indicated by the fracture.   On this point, also, the defendants acted upon their own judgment, receiving neither guaranty or representation from the seller. If their expectations are not realized they must themselves bear the loss.

When the judge found that the plaintiff had delivered precisely the article he had contracted to sell, this embraced a finding that he had delivered iron from the Poughkeepsie foundry.   It can scarcely be said, with propriety, that he refused to find on this point.   He finds that the Poughkeepsie iron works included two stacks at Poughkeepsie and one at Falkill, and that the latter was a part of the works of the Poughkeepsie foundry.   The proof showed, also, that the same parties conducted the whole works.

If these particulars are borne in mind there will seem to

be no embarrassment arising from the refusal to find upon the points suggested. In the points of the appellants' counsel the refusals commented upon are the following, viz. :

1. That the judge refused to find that Nos. 1 and 2 had a known market signification and representing known qualities of iron in the market.

2. That the judge refused to find that the iron delivered was not marketable as Nos. 1 and 2, and was not merchantable.

3. That the quality of this iron could not be satisfactorily determined before it was smelted.

4. Concerning the foundries whereat this iron was manufactured.

5. That the inferior quality of the iron was due to improper material or bad manufacture.

As to several of these requests there was conflicting testimony, and no exception would lie to a refusal to find, as requested, for that reason. If, however, I am correct in the views before expressed, no one of them is material. The case was decided by the judge, and rightly, upon the other features of the case.

Objection is also made that the judge refused to find that the defendants notified the plaintiff of the unmerchantable character of the iron as soon as it was ascertained. There are several answers to this request. 1. As already explained, there was no contract that the iron should be of a merchantable character ; it was simply to be Nos. 1 and 2 of the Poughkeepsie foundry. It was proved to be of that character. But 2. The evidence did not sustain the request upon the appellant's theory. This iron was received by the defendants at the wharf, and by them transported to their works at Troy, beginning with the month of February, 1864, and ending with the month of September. On the 18th of May, in a letter to the plaintiff, the defendants complained that the iron was not as good as they had been led to suppose, and did not make as good castings as they wished, and asked to be helped out of their trouble by a careful selection of all extra one and two in the next lot. On the 27th of June they made similar

complaints, and again on the 27th of October. In the month of August, one of the defendants, in person, made complaint of the iron to the plaintiff's agent at the works. Unless I have overlooked some portion of the evidence, this comprises all the proof that was made on this point. It will be observed : 1. That the iron was all taken by the defendants. 2. That none of it was returned ; it was all used by them. 3. There was no offer to return any part of it. 4. There was no notice to the plaintiff that they intended or wished to return it; or, 5, any request to the plaintiff to take it back. This does not justify the defendants' position. Again on the 16th of August the defendants paid the sum of $4,500 " to balance your account to date against ourselves." This was a settlement in full up to that period and a waiver of former complaints. But, 2. In executory contracts like this, if the buyer deems the article not the one contracted for he must return it to the vendor, or he must notify him of the objections and offer to return it. The right of complaint does not survive the acceptance after opportunity to ascertain the defect. The retention of the property is an admission that the contract has been performed. (*Reed* v. *Randall*, 29 N. Y. R., 358.)

Whatever defect there was in this iron was discovered at least as early as June. The complaint was reiterated in August and in October. But there was no return or offer to return, or notice to take back. They never intended or desired, it would seem, to give up the property. They wished to use it in their business, make the profits in that direction, and yet to claim damages from the plaintiff. This they cannot do.

Upon the whole case judgment should be affirmed, with costs.

EARL, C. It appears from the evidence that there are kinds of iron known in the market as No. 1 and No. 2 Poughkeepsie pig iron ; and these kinds are distinguished from each other by the size of the granulation or crystallization—the former being softer and of coarser grain than the latter. It was these two kinds of iron which the plaintiff contracted to sell to the defendants.

The plaintiff did not warrant that the iron was fit for any particular purpose, or that it was of any particular quality.

If we assume that the plaintiff was bound to deliver merchantable qualities of Nos. 1 and 2 pig iron, it does not aid the defense, as there was no proof, certainly no uncontroverted proof, that the iron delivered was not merchantable. It would not make good stoves when mixed in the proportions of two-thirds of No. 1 and one-third of No. 2. And yet there is no proof that it would not make good stoves when mixed with other iron, or that it was not very useful and valuable for many other purposes besides the manufacture of stoves.

The justice who tried the cause having found the making of the contract, and that the plaintiff had fully performed it on his part, found all that it was important for either party that he should find; and his conclusion of law is fully sustained by the findings of fact and the evidence.

The judgment should, therefore, be affirmed, with costs.

All concur. LOTT, Ch. C., not sitting.

Judgment affirmed.