[L. A. No. 4142. Department Two.—April 17, 1918.]

## HUGHES MANUFACTURING AND LUMBER COMPANY (a Corporation), et al., Respondents, v. L. L. ELLIOTT et al., Appellants.

SALE—CORPORATE STOCK—ESCROW INSTRUCTIONS—PASSING OF TITLE TO PURCHASER.—Under a contract for the sale of 288 shares of the capital stock of a banking corporation, by which it was provided that the stock should be placed in escrow and that if not paid for within six months the vendors should have the option of rescinding the sale or recovering the purchase price, written escrow instructions by the vendors to the escrow-holder, with whom the certificates were deposited, to deliver them to the purchaser in whole or in part on payment of a proportionate part of the purchase price, with interest, and, if not delivered within six months, to return the stock to the vendors, were not inconsistent with the actual vesting of title to the stock in the purchasers at the time of the delivery to the escrow-holder.

ID.—EXCHANGE OF STOCK SOLD—EFFECT ON RIGHTS OF PARTIES.— Where, after the deposit of the bank stock in escrow, the stockhold-

ers of the bank agreed to exchange a majority of the bank stock for stock of an insurance company, and the vendors of the bank stock, at the request of the purchasers, signed the agreements necessary for that purpose, under an agreement that the exchange should not affect the sale of the bank stock, but that the insurance stock should be substituted for the bank stock, it was of no consequence that the exchange failed of consummation because of the disapproval of the bank commissioner and the insurance commissioner.

ID.—LIABILITY OF PURCHASER FOR PURCHASE PRICE.—Where, under such agreement of exchange, the insurance stock was deposited in escrow with the bank, but, after the disapproval of the exchange by the commissioner, the original certificate for the bank stock was returned by the bank's president to the escrow-holder under the original agreement, the purchasers, under the original agreement, remained liable in an action for the purchase price.

ID.—CONTRACT—NEW PARTY—RIGHT OF ACTION.—The obligation of a person who, after the execution of the original contract of sale, signed the same as a party thereto, and in all subsequent proceedings was recognized by the vendors as a party to the contract of purchase, was undistinguishable from that of the other parties who, with him, were made defendants in an action to recover the purchase price.

APPEAL from a judgment of the Superior Court of Los Angeles County. John M. York, Judge.

The facts are stated in the opinion of the court.

Frank J. Thomas, Scarborough & Bowen, Edwin A. Meserve, and Shirley E. Meserve, for Appellants.

Sheldon Borden, and George H. Moore, for Respondents.

WILBUR, J.—This is an action to recover from the defendants the purchase price of certain bank stock. The agreement for this purchase was in writing, dated March 15, 1911. The money was to be paid within six months. It was provided that "said stock shall be placed in escrow with R. J. Waters to be by them delivered upon payment to said bank by said second parties (defendants) for the first parties (plaintiffs) said sum of $24,480. In case said second parties fail or neglect to pay said sum of $24,480 within six months, said first parties shall have the right and option to either declare said sale canceled or recover said $24,480." Subse-

quently, on March 24, 1911, escrow instructions directed to R. J. Waters as escrow-holder were signed by the parties plaintiffs and delivered to him, with said 288 shares of stock. These instructions provided that the stock was to be delivered in whole or in part whenever payment was made therefor at the rate of $85 per share, plus three per cent interest from March 24, 1911, and also provided that "In case the said stock has not been delivered to the said parties named therein on or before six (6) months from date, you will return said stock or such portions thereof as shall then remain, to the Hughes Manufacturing & Lumber Company." The purpose of this agreement was undoubtedly to secure to the plaintiffs the purchase price of the stock and to give possession of the unpaid for stock to the escrow-holder. The provision for the delivery of the possession of the certificates of stock unpaid for to the vendors at the expiration of six months was not inconsistent with the actual vesting of title of all the stock in the vendees at the time of the delivery of the stock to the escrow-holder on March 24, 1911. The escrow instructions did not provide that the sale should be rescinded at the expiration of six months. They merely provided that the shares unpaid for should be delivered into the possession of the vendors at that time, while the contract of March 15th gave the option to confirm or rescind the sale to the vendors. After the expiration of the six months the vendors of the stock gave notice to the vendees that they would expect them to pay the full purchase price for the stock, and that "said stock is still with said escrow-holder, R. J. Waters, subject to your order." Under these circumstances the trial court was justified in finding that the title passed. (Civ. Code, secs. 1140, 1141, 1748, 1756; *Cuthill* v. *Peabody*, 19 Cal. App. 304, [125 Pac. 926]; *Hoover* v. *Wolfe*, 167 Cal. 337, [139 Pac. 794]; *Provident Gold Mining Co.* v. *Manhattan Securities Co.*, 168 Cal. 304, [142 Pac. 884]; *Provident Gold Mining Co.* v. *Haynes*, 173 Cal. 44, [159 Pac. 155].)

After the deposit of the bank stock with R. J. Waters, it was undertaken by the stockholders of the bank to exchange a majority of the stock of the bank for stock in an insurance company. At the request of the defendants the plaintiffs signed the various agreements necessary for such exchange. This was done in pursuance of a written agreement between the plaintiffs and defendants, which agreement provided,

"but said exchange shall in no way or manner affect the sale of said 288 shares of the said Oil & Metal Bank & Trust Company's stock, except that said Vulcan Fire Insurance Company's stock shall be substituted in place thereof." In the agreement of exchange by which the insurance company's stock was to be substituted for the bank stock, it was provided that the insurance company's stock received in exchange for the bank stock was to be deposited in escrow with the bank and to remain on deposit with the bank as security for certain agreements on the part of the bank stockholders. The president of the bank, finding that the proposed exchange was disapproved by the bank commissioner and by the insurance commissioner, returned the original certificate for 288 shares of bank stock to R. J. Waters, and it remained with him until the trial. But appellants claim that the agreement of exchange was consummated; that the attempted cancellation of that agreement by the president of the bank was unauthorized; that the title to the bank stock passed to the insurance company or to one Galloway, and that title to the insurance company's stock passed in accordance with the agreement of exchange, and that such consummated exchange was not affected by the unauthorized act of the president of the bank in returning the certificate for the bank stock to Waters. It is immaterial whether or not this deal was consummated. If it was consummated, the effect of the transaction was that the bank held the substituted insurance company's shares under the agreement of exchange entered into by the plaintiff for and on behalf· of the defendants. If not consummated, the mere cancellation of the 288 shares of bank stock shares, for the purpose of issuing a certificate to effect said exchange, was of no consequence. The reissue of the original certificate for 288 shares and its redeposit with Waters placed the matter substantially where it was in the first instance. In either event the whole transaction having been at the request of the defendants, they are in no position to complain. Upon payment of the purchase price they would secure all plaintiff's rights in·the bank stock or in the stock so substituted therefor. If the transactions with reference to the exchange of the stock have any significance, they merely emphasize the fact that both parties regarded the stock as the property of the defendants.

Defendant Montgomery, after the execution of the original contract, signed the same as a party thereto, and in all subsequent proceedings in relation thereto he was recognized as such by the plaintiffs. We see nothing in the case to distinguish his obligation from that of the other defendants.

Judgment affirmed.

Melvin, J., and Victor E. Shaw, J., *pro tem.*, concurred.

Hearing in Bank denied.