## GEO. A. MOORE & CO. v. MATHIEU.

(Circuit Court of Appeals, Ninth Circuit. July 12, 1926. Rehearing Denied September 7, 1926.)

### No. 4818.

**1. Money paid** ⊂⊃9.

Evidence *held* to show that plaintiff made advances for sugar purchased for defendant at defendant's request and for its benefit.

**2. Sales** ⊂⊃166(1).

Contract to sell sugar produced in certain locality, in absence of warranty, is satisfied by tender of sugar meeting such description, regardless of its quality.

**3. Sales** ⊂⊃176(3)—Buyer's objection that tender was insufficient in quantity, because short tons, instead of long tons, were tendered, made after action was commenced, held too late.

Where contract called for 200 tons of sugar, without specifying long or short tons, buyer's objection that tender was insufficient in quantity, because short tons were tendered, not asserted as ground for rejection until after commencement of action *held* too late.

**4. Sales** ⊂⊃170—Delay in shipment of sugar, not due to seller's fault, held not to justify rejection by buyer.

Delay in shipment of sugar from Asiatic port for lack of transportation, not due to seller's fault, *held* not to justify rejection by buyer, in view of correspondence indicating that seller was not obligated to provide shipping.

**5. Sales** ⊂⊃340.

On buyer's refusal to accept goods, seller may store or retain goods for buyer and sue for purchase price, or resell goods as buyer's agent and recover difference between contract price and proceeds of sale.

**6. Appeal and error** ⊂⊃1028.

Judgment of District Court, made on conclusions free from error, will be affirmed, regardless of any deficiencies or imperfections in record.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; John S. Partridge, Judge.

Action by Edgar Mathieu against George A. Moore & Co. Judgment for plaintiff (4 F.[2d] 251), and defendant brings error. Affirmed.

F. Eldred Boland and Knight, Boland & Christin, all of San Francisco, Cal., for plaintiff in error.

P. A. Bergerot and A. P. Dessouslavy, both of San Francisco, Cal., for defendant in error.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

RUDKIN, Circuit Judge. While the original and amended complaints in this case contained a number of counts, there were but two causes of action in all. Stated in inverse order, one cause of action was for the recovery of the equivalent in American money of 15,000 piastres, advanced and paid out by the plaintiff for the use and benefit of the defendant and at its special instance and request; the other for the recovery of the purchase price of a quantity of sugar sold and delivered by the plaintiff to the defendant. The case was tried by the court below without a jury, on written stipulation of the parties. The trial resulted in findings in favor of the plaintiff as to both causes of action. The judgment on the findings has been brought here for review by writ of error.

[1] As to the first cause of action as designated above, there was no controversy over the fact that the money was paid out by the

defendant in error as alleged, and that the amount has never been repaid; but it is earnestly insisted that there was an entire absence of any testimony tending to show that the money was so paid for the use or benefit of the plaintiff in error, or at its instance or request. With this contention we are unable to agree. On December 10, 1919, one Giraud, at San Francisco, cabled the defendant in error at Saigon, as follows:

"Saw Schroder who is leaving today via (steamer) Nanking with agent American firm to close deal. Has letter of credit one million three hundred thousand dollars gold. Asks imperatively you tie up all sugar possible at Saigon and vicinity."

Giraud, at that time, was the commercial attaché for French Indo-China in the United States and Canada. This cable was followed by a second from Giraud to the defendant in error on the following day, to this effect:

"This confirms to you cable sent yesterday the day of departure of Schroder. Am watching your interests. Will keep you informed of developments in the deals. Am awaiting letter you informed me of agent left yesterday has full powers."

The connection of Schroder with the transaction in question is not disclosed, as he was not a witness at the trial, but it was conceded that the plaintiff in error was the American firm referred to in the first cable, and the testimony shows that the second cable was sent at the instance of its president. The reasonable inference from these two cables would be that the defendant in error advanced the money to tie up the sugar at the instance of the principal of the agent who was leaving with the letter of credit for $1,300,000 gold, with full powers, and this inference is confirmed by the fact that the second telegram was sent at the instance of the plaintiff in error. From these cables, and from other testimony in the case, the court below had no difficulty in reaching the conclusion that the advances were made at the instance and for the benefit of the plaintiff in error, and we have as little difficulty in reaching the same conclusion.

This brings us to the other cause of action. April 22, 1920, the plaintiff in error cabled the defendant in error at Saigon:

"What can you offer sugar. Quantity. Date of shipment. Leading port. Quote prices f. o. b. shipping point. Can you arrange tonnage or shall we arrange."

Two days later the defendant in error answered, stating that he could guarantee 200 tons in double sacks at a price of 220 piastres, f. o. b. Saigon. May 3 the plaintiff in error accepted the offer as follows:

"Replying to your 200 tons brown native sugar. We accept at 220 piastres per ton f. o. b. Saigon. We have opened credit by cable Chartered Bank for 50,000 dollars. When can you ship. Confirm this.

On the same date the defendant in error cabled as follows:

"Number one. 3rd May. Replying your telegram number one referring to my telegram of 29th April Giraud. Sugar 200 tons double bags shipment May/June f. o. b. Saigon. Two hundred and twenty local currency per ton loading here. Am trying hard to provide tonnage."

There is some apparent controversy as to the order in which the two cables of May 3 were sent, but that fact is not deemed important. Pursuant to this contract the defendant in error shipped 115.05 long tons by the steamer Santa Cruz, arriving at San Francisco on June 29, and on July 28 63.63 long tons, arriving at San Francisco by the steamer West Niger, September 24, 1920. On July 19 the plaintiff in error cabled the defendant in error, rejecting the first shipment on account of quality and single bags. On the trial it was conceded that the sugar was in fact shipped in double bags, so that the rejection must be justified because of quality, if justifiable at all.

[2] The plaintiff in error contends that it had a right to reject all the sugar tendered, because it was not merchantable in quality, and because the full 200 long tons were not tendered, and that it had a right to reject the last shipment, because it did not arrive during May or June. The court below found that the sugar tendered was of the fair average quality produced at the place of sale, and that it was merchantable in a qualified sense, in view of the low price paid for it, and all the attendant circumstances. The plaintiff in error concedes that the first part of this finding is supported by the testimony, but contends that there is no testimony to support the finding that the sugar was merchantable. We are inclined to agree with the court below on both branches of the finding, but, in any event, the plaintiff in error purchased sugar produced in a certain locality to be delivered f. o. b. there, and a tender of sugar meeting that description satisfied the requirements of the contract. As said by the court in Gossler v. Eagle Sugar Refinery, 103 Mass. 331:

"If they had doubts about the goodness of the article, or did not choose to run the risk

of latent defects, they should have refused to purchase without a warranty upon these points. If the plaintiffs sold it as Manila sugar, in good faith and believing it to be so, without any warranty of its quality or purity, and if it actually was Manila sugar, as that term is understood in commerce, it is difficult to see why they are not entitled to be paid. The defendants made up their mind what they would give, and bought entirely on their own judgment. In the absence of warranty, or deceit or misrepresentation of any kind, on the part of the plaintiffs, it is difficult to see any ground on which the defendants can be relieved from their contract."

See, also, Beck v. Sheldon, 48 N. Y. 365.

Rosenberg v. George A. Moore & Co., 194 Cal. 392, 229 P. 34, cited by the plaintiff in error, is not to the contrary. The contract there involved was so far modified by letters and by the conduct of the parties as to bear no resemblance to the contract now before us.

[3] It is next contended that the tender was insufficient in quantity. The contract of sale is silent on the question whether long or short tons were intended, and no question arose as to the sufficiency of the tender in that regard until after the commencement of the present action. For the purpose of fixing the amount of the purchase price or recovery, it was apparently agreed that long tons were intended. In the absence of this agreement the question whether the contract called for long or short tons would be one of no little difficulty. But, in any view of the case, the quantity tendered was approximately 178 long tons, or 200 short tons, and the tender was not rejected upon the ground of shortage. The objection, when made, came too late.

[4] The next objection is based on the ground that the last shipment did not arrive during May or June. The court below found that the defendant in error had on hand the full quantity for shipment at Saigon, and that the delay in shipment was due solely to lack of bottoms at that port, and, after discussing the controverted question of law whether, under a contract such as this, the duty to furnish the vessel rested upon the buyer or the seller, the court said:

"But, after all, each case must stand on its own facts. Here the cablegrams in effect made it clear that there was no such duty upon the plaintiff. Defendant wired: 'Can you arrange tonnage, or shall we arrange?' To which plaintiff replied: 'To facilitate, willing to endeavor to secure freight and insurance your risk.' In addition to that, I am satisfied from the evidence that plaintiff had the sugar ready to ship, and that the delay was due solely to the lack of bottoms at Saigon, and furthermore that the delay in shipping the second cargo had nothing whatever to do with the rejection. On the contrary, the evidence fairly justifies the conclusion that defendant contracted for an article not readily salable in this market, and that the rejection was due to the discovery of this fact, coupled with a falling market." 4 F.(2d) 251.

This finding or conclusion is supported by the record and calls for no comment.

[5] It is lastly contended that the measure of recovery should be the damages arising from the failure to accept and pay for the sugar tendered in performance of the executory contract and not the purchase price. There is, no doubt, more or less conflict of authority on that question; but the prevailing rule in the federal courts is that, upon the breach of a contract of sale by the purchaser, the seller is at liberty to fully perform on his part, and when he has done all that is necessary to effect a delivery of the property, so as to pass title to the purchaser, he may store or retain it for the purchaser, or he may resell it as agent for the purchaser. If he pursues the former course he is entitled to maintain an action for the purchase price. If he pursues the latter his recovery will be the difference between the contract price and the proceeds of the sale. Kinkead v. Lynch (C. C.) 132 F. 692; Pabst Brewing Co. v. E. Clemens Horst Co., 229 F. 913, 144 C. C. A. 195; Garcia & Maggini Co. v. Washington Dehydrated Food Co. (C. C. A.) 294 F. 765; N. Jacobi Hardware Co. v. Vietor (C. C. A.) 11 F.(2d) 30.

We are not satisfied that a different rule obtains in the state of California. Cuthill v. Peabody, 19 Cal. App. 304, 125 P. 926; Lewin v. Hanford, 35 Cal. App. 36, 169 P. 242; Jensen v. Carlenzoli, 54 Cal. App. 656, 202 P. 452; Hughes Mfg., etc., Co. v. Elliott, 178 Cal. 181, 172 P. 584. Nor are we prepared to say that the Civil Code of that state or the decisions of its courts are controlling upon us in actions upon contracts such as this.

[6] The opinion of the court below contains a full review of all questions of law and fact involved in the case, and its conclusions are free from error. Its judgment must therefore be affirmed, regardless of any deficiencies or imperfections in the record brought here.

It is so ordered.