GINOCCHIO et al. v. KOCKOS et al.

(Circuit Court of Appeals, Seventh Circuit.
April 2, 1927. Rehearing Denied
April 29, 1927.)

No. 3746.

1. Pleading ⊜408—Objection to any recovery under declaration held timely, made at close of plaintiff's case.

In seller's action against buyers after wrongful refusal to accept goods, defendant's objection to any recovery under plaintiff's pleadings held timely made at close of plaintiff's case.

2. Sales ⊜218½—Question whether there was intent to pass title and whether it was expressed or signified are questions of fact, unless there is clear, unequivocal expression thereof (Deering's Civ. Code Cal. 1923, § 1502).

Ordinarily intent to pass title is a question of fact, and where something is done to signify the intent, the question of what the intent was, and whether it was expressed or signified, as affects passing of title under Deering's Civ. Code Cal. 1923, § 1502, are questions of fact, unless there is a clear, unequivocal expression of intent.

3. Sales ⊜218½—Question whether title to goods passed, dependent on whether seller signified such intent after rejection of tender made, held one for jury, and instructed verdict improper (Deering's Civ. Code Cal. 1923, §§ 1502, 1503, 3310, 3311).

In seller's action against buyer, after refusal to accept tender of goods sold, question whether title had passed, dependent, under Deering's Civ. Code Cal. 1923, § 1502, on question whether seller had signified his intent to pass title, held for jury under evidence, and instructed verdict for seller for contract price, on theory that title had vested in buyer, and that damages were recoverable under section 3310, rather than under section 3311, was reversible error, in view of section 1503.

4. Trial ⊜176—Refusal to permit withdrawal of request for instructed verdict held error.

Court's refusal to permit defendant to withdraw request for instructed verdict, for apparent reason that it considered there was only a question of law involved, held error.

Evans, Circuit Judge, dissenting.

In Error to the District Court of the United States for the Eastern Division of the Northern District of Illinois.

Action by Harry Kockos and another, copartners doing business and trading as Kockos Bros., for the use of John Christo, against Louis Ginocchio and others, copartners doing business and trading as the United Fig & Date Company. Judgment for plaintiffs, and defendants bring error. Reversed and remanded.

18 F.(2d)—13

Clay Judson, of Chicago, Ill., for plaintiffs in error.

Walter M. Fowler, of Chicago, Ill., for defendants in error.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Defendants in error, plaintiffs, residing in California, sued plaintiffs in error, defendants, residing in the Northern district of Illinois and doing business as the United Fig & Date Company. Defendants moved for an instructed verdict, but before action thereon they moved to withdraw the motion. Both motions were denied, and the court, on plaintiffs' motion, directed a verdict for $34,169.80.

Plaintiffs defaulted in the performance of two contracts made on September 22 and October 14, 1919, for the sale and delivery to defendants of peanuts, and controversy over the damages for breach of those contracts caused the breach by defendants of the following contract, out of which this action arose:

"No. 223. San Francisco, California.
"January 12, 1920.

"Kockos Bros., San Francisco, California, hereby agrees to sell, and United Fig & Date Company, Chicago, Ill., hereby agrees to buy:

"Article: Chinese shelled peanuts (hand picked) f. a. q. s. '1919 crop'—38/40s.

"Quantity (about): One hundred (100) tons of 2,000 pounds each.

"Shipment: January/February/March; shipment from Orient.

"By steamer or steamers, direct or indirect to:

"Price: Twelve dollars and twenty-five ($12.25) cents per 100 pounds, gross landed weights, f. o. b. cars Pacific Coast, duty paid.

"Payment: Payment against sight draft with bill of lading attached.

"Subject to conditions on reverse side.

"Remarks: Subject to inspection upon arrival."

Material conditions on the reverse side are:

"The goods covered by this contract are for buyer's account and risk as soon as landed from the carrier, and order tendered, except in the instance of an f. o. b. price being denoted. * * *

"If shipment is not accepted or disapproved within three full business days after arrival, contract shall be considered fully complied with, on seller's part, and invoice,

if unpaid, becomes immediately due and payable.   *   *   *

"This contract shall be conclusively presumed to have been entered into in San Francisco."

The peanuts arrived at the port of Seattle on April 1 or 2, 1920, and the following telegrams passed between the parties, after inspection:

Defendants to plaintiffs:
                "Chicago, Ill., April 9, 1920.

"Our inspectors report on 100 tons Eastern Admiral satisfactory. We therefore accept tender provided you agree deduct from invoice $4,000 representing absolutely bona fide claim we have against you for loss suffered account your failure perform contract for 25 and 50 tons Japanese peanuts. Must have immediate wire."

Plaintiffs to defendants:
                        "April 9, 1920.

"Qualified acceptance imposing new terms refused. If you do not accept tender without imposing conditions will take steps to enforce contract."

Defendants to plaintiffs:
                "Chicago, Ill., April 10, 1920.

"Telegram received. In view of your refusal to allow our just claim for damage arising out of your nonperformance of contract covering 75 tons Japanese peanuts we hereby decline accept 100 tons Chinese thirty-eight forties as tendered by you."

Plaintiffs to defendants:
                        "April 10, 1920.

"Refuse to accept your breach of contract. Insist upon performance. Will sue you for full purchase price goods being stored your expense."

Defendants acknowledged receipt of plaintiffs' telegram of April 10th and said:

"In reply to which we confirm our wire of April 10th, which sets forth our position in the matter, and hereby disclaim any liability in connection with these goods."

Plaintiffs sent defendants the following:
                        "April 10, 1920.

"Sold to United Fig & Date Co., Chicago, Ill.

"Net cash. Duplicate.

| Quantity and Style of Pkg. | Description. | Quantity. | Price per C. | Amount. |
|---|---|---|---|---|
| 2000 bags | Chinese shelled peanuts | 200000 | 12.25 | 24,500.00 |
| Charges in connection with shipment | | 200000 | 65 | 1,300.00 |
| Oriental shipment | | | | 25,800.00 |

"Arr. ex S. S. Eastern Admiral at Seattle, Wash'n, marked 38x40 Keb Seattle. Net cash against documents. Weight adjustment to be made later."

Subsequent thereto there was no communication of any kind between the parties. The peanuts were warehoused under the following negotiable warehouse receipt:
                        "Seattle, 4/19/20.

"Received in store from Kockos Bros., San Francisco, Cal., the merchandise described below, which will be delivered upon return of this receipt properly indorsed and payment of all charges.

Two thousand (2,000) bags shelled peanuts 38x40 (K E B) 9 slack bags wgts. 641#.
        W. H. Bd. 536 B/L 69.
Weight or measure, 100 tons.   Location, Whse No. 1–50.

        "Labor.

"Storage rate, 50c. per ton unloading. 75c. per ton per month. 50c. per ton loading out.

"Storage from 4/19/20.
                "Jordan Terminal, Inc.,
                        "By H. Van Kenven."

(No indorsement.)

In our view of this case, it will be necessary to consider only two questions: (1) Could there be any recovery under the declaration? (2) Was there error in taking the case from the jury?

The declaration consists of certain of the common counts. The first two counts are for goods sold and delivered, the third a sort of consolidated common counts for money lent, paid out, and expended, money had and received, interest, labor, services, and material, and the last count is on an account stated. We are of opinion that, on the record, there could clearly be no recovery under any count, unless possibly on the one for goods sold and delivered.

[1] Plaintiffs' urge is that, at most, there was only a variance, and that objection was not made in apt time. The question was raised at the close of plaintiffs' case, and was in ample time.

Consideration of the second question will answer the first question. Plaintiffs' recovery was on the theory that their measure of damages was the contract price. That is the measure provided in section 3310, Deering's Civil Code of California, 1923, if the title is vested in the buyer; but under section 3311 thereof, where the title has not passed, the measure is, roughly stated, the difference between the value then and the contract price. The former represents

plaintiffs' contention and the latter defendants'.

One fact for plaintiffs to establish was that title had vested in defendants. Section 1502 of Deering's California Code provides: "The title to a thing duly offered in performance of an obligation passes to the creditor, if the debtor at the time signifies his intention to that effect"—thus making the question of the passing of title not only one of intent, but of an intent then signified.

[2, 3] Ordinarily intent is a question of fact, and where something must be done to signify the intent to pass a title, unless there is a clear, unequivocal expression of such intent, the question of what the intention was and whether the intent was expressed or signified are questions of fact. If we find the signification of any intent in plaintiffs' telegram of April 10th, supra, it is opposed to any theory of an expression of intent to pass title. It refuses to accept breach, insists on performance of contract and says "goods being stored" (not "for you" but) "at your expense."

If the warehouse receipt, taken by plaintiffs following the tender, is to be construed as a written instrument, it must be considered as indicating an intention contrary to any intent to pass title, or a belief that title had passed. Considered as an act by plaintiffs, it is simply a fact to be considered in connection with other facts, some of which are that neither the warehouse, where the peanuts were stored, the kind of receipt taken, nor any other matter concerning it, was disclosed to defendants. Section 1503 of the California Code provides:

"*Custody of Thing Offered.* The person offering a thing, other than money, by way of performance, must, if he means to treat it as belonging to the creditor, retain it as a depositary for hire, until the creditor accepts it, or until he has given reasonable notice to the creditor that he will retain it no longer, and, if with reasonable diligence he can find a suitable depositary therefor, until he has deposited it with such person."

The record shows that plaintiffs had had long experience in handling peanuts on a large scale and knew that, during certain months in the Seattle climate, they could be safely left in an ordinary warehouse and during other months cold storage was necessary to prevent deterioration and loss. They were kept through two summers in ordinary storage and were lost through deterioration.

It seems not necessary to discuss the fact that the warehouse receipt was issued under the laws of the state of Washington, the provisions of which are very explicit and clearly define the rights and responsibilities of the parties to the receipt. Nor is it necessary to discuss the evident intent that the bill of lading was to be one issued under the laws of Washington.

[4] It is not contended that any title passed under the provisions of the contract until the tender. Inasmuch as the court evidently denied defendants' motion to withdraw its request for an instructed verdict, because it considered there was only a question of law, we do not deem it necessary to do more than say that it was so clearly the right of defendants to withdraw that motion that it was error not to permit it to be done.

We are further of opinion that, if there was no delivery, there could be no recovery under the common counts, and that it was error in any event to instruct for plaintiffs, because there was a question for the jury, even if the declaration was good.

The judgment is reversed and the cause remanded.

EVAN A. EVANS, Circuit Judge (dissenting). I do not believe that the evidence presented a jury question upon a material issue.

The facts are fully stated in the majority opinion. The contract was in writing. All communications between the parties arising out of plaintiffs' tender and defendants' rejection are in writing. Ordinarily such a situation presents legal questions only.

Briefly stated, sellers brought the peanuts into the Seattle port, and notified the buyers in Chicago. An inspection disclosed the goods to be of the quality specified. The defendants recognized and conceded a valid tender, as is shown by their telegrams of April 9th and 10th. From the one of the 9th this excerpt is conclusive: "We therefore accept tender." The telegram of the 10th contains this: "We hereby decline accept hundred tons, etc., *as tendered by you.*" The significant and indisputable fact to be drawn from these telegrams is the unqualified admission that the peanuts of the quality specified had been tendered. The offer of acceptance, it is true, was conditional. *The recognition of a tender was unqualified.* The other portions of the telegrams and letters quoted in the opinion relate to allowance of defendants' claim rising out of other transactions.

The result of all these negotiations is summed up in the final communication of

the defendants, who "hereby disclaim any liability in connection with these goods." This statement, following its wire of two days previous, "We hereby decline accept hundred tons of Chinese thirty-eight forties as tendered by you," definitely closed the matter and fixed and determined the rights of the parties. It was conceded upon the argument that defendants breached their contract when they refused to accept these peanuts. In other words, they had no right to attach any condition to their acceptance. Plaintiffs' right to recover was thus clearly established, and in fact conceded. But what may they recover? The purchase price of the peanuts, or the damages?

When defendants breached their contract, plaintiffs had an election of remedies. 24 R. C. L., p. 86; Ackerman v. Rubers, 167 N. Y. 405, 60 N. E. 750, 53 L. R. A. 867, 82 Am. St. Rep. 728; Putnam v. Glidden, 159 Mass. 47, 34 N. E. 81, 38 Am. St. Rep. 394. Equally decisive are the cases that hold an election once made is conclusive. White Walnut Coal Co. v. C. Coal & M. Co., 42 L. R. A. (N. S.) 673, note. In other words, a seller, having elected to recover on the purchase price, cannot thereafter change its remedy and seek the damages presented by the difference between contract and market price; and, vice versa, a seller who elects to recover damages cannot thereafter rechoose his remedy and seek the purchase price

As I analyze this case, the question before us is whether the evidence of this election is conflicting, and presents an issue for the jury. Bearing in mind that the seller (not the purchaser) is making the election, and his actions must be studied to determine what effect shall be given to them, what do we find? Can there be more definite expression of an election than is found in plaintiffs' telegrams of the 9th and 10th? Language can hardly be found which more definitely states plaintiffs' position than its concluding telegram: "Refuse to accept your breach of contract. *Insist upon performance. Will sue you for full purchase price. Goods being stored your expense.*" These telegrams were followed by a bill for the full purchase price of the peanuts. If this does not conclusively establish an election on the seller's part, from which no withdrawal was possible, had they so desired, the English language is deficient.

But it is claimed that on the 19th of April, some nine days after the election had been made, the goods were placed in a warehouse in Seattle, and the warehouse company issued a receipt in the name of the plaintiffs, and this fact makes the issue one for the jury. But the election of remedies had been made by the telegrams of April 9th and 10th. The whole matter had been sealed by defendants' reply letter, which ended with these words, "We confirm our wire of April tenth * * * which sets forth our position in the matter and hereby disclaim any liability in connection with these goods," and which letter showed that plaintiffs' telegram had been correctly transmitted. It was not within the power of plaintiffs to make a new election thereafter.

They did not desire to do so, or attempt to do so. They sent defendants a bill; then sued, not for damages, but for the purchase price. True, they notified defendants that they would store the goods at their (defendants') expense. This was perfectly consistent with their election, made in the same telegram, "Will sue you for the full purchase price." At no time did plaintiffs exercise dominion over, or assert title to, the peanuts after the date they elected to sue defendants for the full purchase price. Had they done so, it would have been futile, in view of the election previously made.

But the peanuts were on the wharf at Seattle. Plaintiffs lived in San Francisco; defendants in Chicago. The peanuts had to be removed from the dock within 10 days of their arrival. They had been imported by plaintiffs, and therefore placed on the dock by the plaintiffs. The dock company knew no one in the transaction but the plaintiffs. Plaintiffs therefore ordered their removal to the warehouse. By no stretch of the imagination should this act be construed as impeaching plaintiffs' election. The warehouse company knew no one in the transaction save the importer, who directed their removal to his warehouse. It therefore stated in its receipt, "Received in store from Kockos Brothers," etc. The warehouse company's receipt was not an admission against plaintiffs, certainly not when, definitely and clearly, at the time plaintiffs made their election to hold defendants for the purchase price, they informed them that the peanuts would be stored at their expense. Moore & Co. v. Nathieu, 13 F.(2d) 747.

Defendants are hopelessly inconsistent in insisting that, because plaintiffs caused the peanuts to be placed in the warehouse, they cannot recover their purchase price, and in the next breath assert that they should be permitted to set off damages because plaintiffs, under the California statute, were required to act as bailees for hire, and condemn them for not placing the peanuts in a

cold storage building, as a bailee for hire would have done.

Respecting the California Code and its bearing upon plaintiffs' failure to store the peanuts in a cold storage warehouse, little need be said. Its application to a case like this is not appreciated. The term "until delivery is completed" removes it as an applicable statute in this case. For defendants' wires of the 9th and 10th both recognize a tender by plaintiffs and a refusal to accept by defendants. Section 1748 of the California Code does not impose any duty upon seller *after tender is made, and acceptance is finally and definitely refused.*