## WELCH v. T. W. WARNER CO.

### No. 134.

Circuit Court of Appeals, Second Circuit.

Jan. 5, 1931.

Willcox, Swiger, Chambers & Scandrett, of New York City (Henry B. Potter and J. Anthony Panuch, both of New York City, of counsel), for appellant.

Platt, Field & Taylor, of New York City (Eli J. Blair, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff filed his complaint at law in the state court upon a contract between his assignor, Andrews, and the defendant company. The defendant removed the cause for diversity of citizenship and answered. When the cause came on for trial in the District Court, the plaintiff moved to amend the complaint, and Judge Coleman sent the cause to the motion part, at which Judge Woolsey refused to allow the amendment and dismissed the original complaint for insufficiency on its face. From the judgment so entered the plaintiff appealed. The appeal therefore involves the validity of each complaint, there being no reason why the plaintiff should not have been allowed to amend.

The first complaint alleged that Andrews and the defendant had entered into a contract in California, by which the defendant promised to sell certain shares of stock in a company, known as the Peerless Scale Corporation, in exchange for a stipulated sum of money and one hundred shares of the stock of the Liberty National Bank of New York.

The agreement took the form of instructions to a California bank, with which the defendant had deposited the Peerless shares, directing the bank to deliver them to Andrews upon payment to it of the money and the Liberty shares. Andrews was to perform by June 25, 1927, and he might substitute a note for cash, which was to be secured by certain bonds of the Peerless Company. If he failed to perform on or before that day, the bank was to return the shares to the defendant.

On July 22, 1927, Andrews not having meanwhile performed, the parties made another contract by which the time for his performance was extended. He was to pay the cash in three installments—conditional however upon the "refinancing" of the Peerless Company—one-third within fifteen days after the Peerless bonds were offered to the public, one-third thirty days after the first installment, and the rest thirty days after that. The bank was not to deliver the shares until all the payments had been made and the Liberty shares delivered; the defendant was free to withdraw the Peerless shares, if Andrews had not paid the first installment by September 10, 1927.

The complaint continued that in March, 1928, the defendant had sued Andrews by bill in equity in a California court, which alleged that the Peerless Company had been "refinanced" on December 14, 1927, and its bonds publicly offered on September thirtieth of that year. That this bill had also alleged that the Liberty shares had a value of twenty-five thousand dollars, and "should have been transferred and delivered prior to the beginning of this action," but that Andrews had refused to pay the cash or deliver the shares; and that the defendant thereupon tendered the Peerless shares, still on deposit with the bank, the tender being conditional upon delivery by Andrews of the Liberty shares and payment of the cash. That the bill concluded with a prayer for payment of the cash and a delivery of the Liberty shares, "or if said shares of stock cannot be delivered, then for $25,000, being the reasonable value thereof."

The complaint then went on to say, contrary to the allegations of the California bill, that the "refinancing" of the Peerless company was completed in May, 1928, and that on June 7, 1928, while that bill was still pending, Andrews tendered to the bank an amount in cash equal to the stipulated sum and $25,000 at which the defendant had valued the Liberty shares. The bank refused

234

the tender and redelivered the Peerless shares to the defendant, which thereupon discontinued the California suit. "Andrews duly performed all the conditions of the said contract * * * on his part to be performed, except such as were waived by the defendant." The plaintiff demanded judgment for the difference in value between the Peerless shares on June 7, 1928, and the purchase price.

The amended complaint differed from the original in alleging a tender to the defendant, not to the bank, on June 7, 1928, while the California bill was pending. It read as follows: "Andrews tendered to the defendant herein the purchase price of the said stock * * * in accordance with the terms of the agreement with defendant, and also the purchase price demanded by defendant in his complaint in the California action." Again, "that at or about the making of said tender to the defendant by the said Archie M. Andrews as aforesaid, defendant with full knowledge of said tender, repudiated said agreement * * * and refused to be bound thereby and to carry out the terms thereof and refused to deliver the said stock."

█ We first take up the original complaint. Andrews was in default if he failed to pay within fifteen days after the Peerless bonds were offered to the public, provided that the company had then been "refinanced"; if that happened thereafter, then as soon as it occurred. The original complaint does not allege when the Peerless bonds were publicly offered, and would be bad for that reason, because this might have been more than seventy-five days before the "refinancing" was completed in May, 1928. The plaintiff's theory is that, though Andrews was in default, the defendant, by suing for specific performance of the contract in California, excused timely performance of the original contract, and that therefore while the suit was pending, it was a continuing offer to deliver upon tender in accordance with its terms. Assuming as much for argument, the tender did not conform with the contract even as so varied by the bill. The complaint alleged a tender of cash to the bank, not only as to the stipulated amount, but also as to the Liberty shares. The plaintiff justifies this departure on the ground that the California bill had substituted $25,000 for those shares. This is not true; the bill demanded the shares, and asked for money in their place only in case they could not be delivered. The original complaint does allege that they could not be

so delivered, and presumably they could have been in fact. In mercantile transactions the seller must tender goods of the described quality or he will fail; it is not enough that the substitute is substantially as serviceable as what was stipulated. Filley v. Pope, 115 U. S. 213, 6 S. Ct. 19, 29 L. Ed. 372; Cleveland Rolling Mill Co. v. Rhodes, 121 U. S. 255, 7 S. Ct. 882, 30 L. Ed. 920; Gunderson v. Brey, 210 F. 401 (C. C. A. 3); Crocker Bank v. De Sousa, 27 F.(2d) 462 (C. C. A. 9); Manbre Saccharine Co. v. Corn Products Co., [1919] 1 K. B. 198; Vigers v. Sanderson, [1901] 1 K. B. 608; Orient Coal Ld. v. Brekke, [1913] 1 K. B. 531; Timken Carriage Co. v. Smith & Co., 123 Iowa, 554, 99 N. W. 183. In the case at bar the defendant was not obliged to buy the Liberty shares, even though these were to be had; and indeed it might well be that the market in such securities was not active, and that they could not be had at a certain price upon the exchanges. If so, the defendant must shop about for them, and might or might not have found the price tendered sufficient. The valuation put upon them in the California bill was probably by way of damages in case they were not to be had, but in any case it did not excuse their delivery. The original complaint was therefore bad for failure to allege performance of a condition precedent upon the defendant's promise.

█ The amended complaint was designed to avoid, not this difficulty, but another; that is, that the plaintiff's cause of action, if any, was only against the bank, as escrow holder of the Peerless shares. The original complaint had alleged that the defendant after Andrews' tender had withdrawn the shares, and the defendant insisted that, if so, this was at worst a conversion, and could not be pursued in an action sounding in contract. We are by no means satisfied that such a departure would have been fatal, in view of section 111 of the New York Civil Practice Act, but the point does not arise, as we view it, because the same fundamental defect remained. It is true that the amended allegation of performance is general in its language. It says that Andrews tendered "the purchase price of the stock * * * in accordance with the terms of the agreement," but this was certainly not intended to mend the defect of the original complaint as to what was actually tendered. That the plaintiff did not mean anything of the sort appears from an amendment proposed at the trial, and from the supporting affidavit. His

purpose was to take the position that a tender to the bank was a tender to the defendant, and that the defendant, by its reserved right to withdraw the shares, became liable in contract for the bank's default. This indeed is his avowed position now, for he does not assert that the original complaint was false.

We do not find it necessary to decide whether the deposit was an escrow, stricti juris. In any event Andrews' right to the shares depended upon his compliance with the conditions, and the California bill at most varied these no further than to excuse the delay, and to substitute cash for the Liberty shares in case these could not be delivered. In modern times it is true that courts look upon pleadings with an auspicious eye, but it would, we think, carry that doctrine beyond any reasonable extent to read the allegations of the amended complaint as contradictory to those so specifically set forth in the original.

And even if we were to do so, the plaintiff would have still another bridge to cross. He has alleged a tender to the defendant, which he defends on the ground that it will admit proof of tender to the bank. We might ordinarily go so far, but the contracts at bar scarcely allow the bank to be treated as the defendant's agent. Whether or not we treat the deposit as formally an escrow, the plaintiff must argue that the California bill presupposed that the deposit should remain while the suit was pending. The defendant's position in that suit was therefore that it had already performed, and this was inconsistent with its continued right to withdraw. If so, Andrews had to make the proper tender to the bank, not as an agent of the defendant, but as one to whom its performance had already been made. The fact that upon Andrews' default, the bank should redeliver the shares, did not affect this; that is true in the case of any escrow. It is, therefore, very doubtful whether a tender to the bank, the only one which could have served the plaintiff, was provable under the amended complaint.

However, we find it unnecessary to press home this argument; it is enough that, unless we close our eyes to the substance of the case, the allegation of tender is open to the same objection as in the original complaint. For this reason we agree with Judge Woolsey in thinking that it would be idle to allow the cause to go on to an inevitable outcome which we can now predict.

Judgment affirmed.