**T. W. WARNER CO. v. ANDREWS et al.**
**No. 17.**

Circuit Court of Appeals, Second Circuit.
Nov. 5, 1934.

Platt, Taylor & Walker, of New York City (Eli J. Blair, of New York City, of counsel), for appellant.

A. M. Lowenthal, of New York City, for appellee Andrews.

George L. Naught, of New York City (Allan C. Rowe, of New York City, of counsel), for appellee American Surety Co.

Before MANTON, **L. HAND, and** SWAN, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment in its favor against Andrews and the American Surety Company for insufficiency in damages. It will be convenient to ignore its corporate character and speak of its sole shareholder, Warner, as though he were the plaintiff. The first count of the complaint is against Andrews to recover for damages caused by three attachments taken out in two actions begun by him in the summer of 1928. The second is against the surety company upon three bonds which it posted to secure Warner against damage arising from these attachments. The sheriff levied upon cash and shares of "Peerless" stock in the hands of Warner's brokers in New York, and both actions eventually failed. The court below allowed as damages a counsel fee for preparing to vacate the two attachments in the first action, the sheriff's poundage paid in the second action to release the cash, and the estimated premium of a surety bond, large enough to secure the amount of Andrews's claim. These three items came to something over $12,000, and as the aggregate penalty on the first two bonds was $15,000 and on the third bond, $12,000, judgment was entered against the surety company and Andrews for the amounts found. Neither has appealed, but Warner seeks to recover in addition the difference in value between his shares when attached and when released, the difference between the interest his brokers would have paid him and what the sheriff allowed upon the cash attached, and the cost of his lawyers in defending the actions.

The facts are as follows: Warner agreed to sell certain shares of the "Peerless" stock

to Andrews; the details of the contract are not important, they may be found in our opinion in Welch v. Warner, 47 F.(2d) 232. Warner began a suit for the specific performance of this contract in California, and later Andrews began in the Supreme Court of New York two actions at law in succession, out of which the case at bar has resulted. Both he and Warner were non-residents of New York, and as the cause of action arose outside that state, its supreme court had no jurisdiction over the first action, begun in Andrews's name on June 12, 1928. New York General Corporation Law (Consol. Laws, c. 23), § 225. In this the defendant surety company posted a bond for $10,000 on the first attachment, and for $5,000 on the second, the occasion for which was an increase in the ad damnum. Learning that this action could not be maintained, Andrews assigned the cause of action to his secretary, Welch, a resident of New York, and discontinued it on June 29, 1928, at which time the attachments were vacated conditionally upon the payment of the poundage. The shares meanwhile had not changed in value, and Warner had therefore suffered no loss beyond the poundage due, and the expense of his lawyers' preparation to vacate the attachments. On the same day, June 29th, Andrews attached the same property in an action begun in Welch's name, in which the surety company posted a third bond for $12,000. On the eighteenth of July the shares were released, the levy remaining upon the cash until November, 1929, when it was discharged by Warner's substituting a bond. Before their release the shares had much fallen in value, and this constitutes the chief item of the present claim. In July, 1930, Warner moved to dismiss the complaint in Welch v. Warner as bad in law, and succeeded; we affirmed the ruling in January, 1931. 47 F.(2d) 232. He then began this action on March 25, 1931, by a complaint in two counts, as we have said, one against Andrews, the other against the surety. The first bears every evidence of having been draughted upon a cause of action for malicious prosecution, and Warner at the trial did not seek to support it as anything else. It does not suggest that the attachments were trespasses, nor does it allege the fact, essential as we shall show, that Andrews was a non-resident; on the contrary it says that when the complaint was sworn to, he resided in New York. The second count sounded in contract on the bonds. The judge held that, as the count against Andrews was for malicious prosecution, so far as it depended upon the action of Andrews v. Warner, discontinued in June, 1928, it was barred by the New York Statute of Limitations, the period for which is only two years. Section 50, New York Civil Practice Act. So far as it depended upon the action of Welch v. Warner, he held that though brought in time, Andrews had not proceeded without probable cause. Upon the count against the surety he allowed the poundage, the estimated premium for two years and two months upon a bond for the full ad damnum, and a fee of $1,000 for legal services in preparing to vacate the two attachments in Andrews v. Warner. These items amounted to $12,293.96. He refused any allowance for the fall in value of the shares, for the lost difference in interest, for any legal services in the general defence of the actions, or for punitive damages; these are the only matters now in controversy.

The mere existence of the action for malicious prosecution is of course evidence enough that at times it may be a wrong to invoke the action of a court; champerty and maintenance were earlier instances of the same underlying idea. But it is an altogether different thing to say, when a court having lawful power in the premises, authorizes the seizure of property or person, that the seizure is an unlawful invasion of either interest. Because it is not unlawful, courts require indemnity from the party who moves them to act, as a condition to relief in limine. That indemnity is the measure of the injured party's remedies, so long as he seeks to treat the seizure as other than an incident in the unlawful maintenance of the suit as a whole. The opposite was probably held in Turner v. Felgate, 1 Levinz 95, but even at the outset it never had the united assent of the bench; nor did the doctrine get any foothold. The distinction soon became recognized; and, although it is a trespass to execute any process if the court has no jurisdiction over the action (Smith v. Bourchier, 2 Strange, 993, especially as discussed in Perkins v. Proctor, 2 Wilson, 282, 285), or if the process be void (Parsons v. Lloyd, 3 Wilson 341; Wilson v. Smith, 14 C. B. [N. S.] 596; Brooks v. Hodgkinson, 4 H. & N. 712; Wehle v. Butler, 61 N. Y. 245; Tiffany v. Lord, 65 N. Y. 310), regular process coram judice will protect a party, even though the suit finally fail. Carman v. Emerson, 71 F. 264 (C. C. A. 8); Whitten v. Bennett, 86 F. 405 (C. C. A. 2); Reisterer v. Lee Sum, 94 F. 343 (C. C. A. 2); Italian Star Line v. U. S. S. B. E. F. Corp., 53 F. (2d) 359, 361, 80 A. L. R. 576 (C. C. A. 2) (semble); Henderson v. 300 Tons (D. C.) 38 F. 36, 42; Hayden v. Shed, 11 Mass. 500; Barker v. Stetson, 7 Gray (Mass.) 53, 66 Am. Dec. 457; Langford v. Boston & Albany R. R.

Co., 144 Mass. 431, 11 N. E. 697; Day v. Bach, 87 N. Y. 56; Marks v. Townsend, 97 N. Y. 590; Hess v. Hess, 117 N. Y. 306, 22 N. E. 956.

Therefore while it is true that the two attachments in Andrews v. Warner were trespasses, the third in Welch v. Warner was not; over that action the supreme court had jurisdiction, and the attachment was entirely regular. It is very clear that Warner had no mind to sue in trespass at all; he chose to treat the wrong throughout as malicious prosecution, and as single; indeed his position on this appeal, though erroneous, is that all three attachments constitute a single cause of action. Nevertheless, trespass and malicious prosecution are not mutually exclusive—they are frequently joined—and the only added fact here necessary to trespass, that is, Andrews's non-residence, was really not in dispute. In spite of the fact that Warner did not suggest the point until this appeal, we are not satisfied that under modern conditions he must necessarily be precluded from shifting the legal theory of his recovery. Without deciding the point, we shall for argument assume it in his favor; which means that so far as he can show any damages arising from the first two attachments he may recover on the first count. So far as that count depended on Welch v. Warner and was therefore necessarily for malicious prosecution, it is a good defence to it that Andrews consulted McGurk, an attorney in good standing, and only acted upon his advice after a full statement to him of the facts as he understood them. Stewart v. Sonneborn, 98 U. S. 187, 198, 25 L. Ed. 116; Staunton v. Goshorn, 94 F. 52, 60 (C. C. A. 4); Daniel v. Pappas, 16 F.(2d) 880, 882 (C. C. A. 8); National Surety Co. v. Page, 58 F.(2d) 145, 150 (C. C. A. 4); Cook v. Proskey, 138 F. 273, 276, 277, (C. C. A. 2) (semble). Warner answers that Andrews did not tell McGurk all the relevant facts; and that would of course be a good replication. Hays v. Stine, 289 F. 224, 226 (C. C. A.); Moses & Sons v. Lockwood, 54 App. D. C. 115, 295 F. 936, 938. The evidence does not bear it out. The action was for Warner's breach of contract in refusing to sell the "Peerless" shares. The contract or contracts were in writing, and McGurk had copies of them. Andrews told him that he could not tender certain shares of "Liberty" stock, which had been made a part of the consideration and McGurk answered that it was not necessary, because the parties had made cash an equivalent. As to Andrews' past failures to perform, they might have been an excuse for Warner's performance; but in

McGurk's judgment the suit brought by Warner in California excused them and kept the contract alive. These were the determining facts. That Warner was a rich man and might have been sued in California was not in point. Andrews might attack him wherever he could reach him or his property; his motives had nothing whatever to do with his probable chance of success, the absence of which was a necessary element in any action for malicious prosecution.

Aside from all this, we are ourselves familiar with the litigation, for we decided it. The result hinged upon whether the tender of the "Liberty" shares was a condition precedent to Warner's promise to deliver the "Peerless" shares. The "Liberty" shares had been valued in Warner's suit in California, and it was by no means plain that a tender of the money would not have been their equivalent. The reasoning by which we reached the opposite result was somewhat refined; it was certainly not unnatural to take the opposite view, and indeed it is not demonstrable even now that it would inevitably have been erroneous. Both parties were insisting upon the continued existence of the contract, and the question was as to the final legal result of their manœuvering for position. The attitude of the courts upon that was impossible to forecast with any certainty. Therefore, in our judgment the judge, who was obliged to decide the issue of probable cause for himself, was right in saying that Warner had not carried the burden which lay on him. We hold that the first count is barred so far as it rests upon Welch v. Warner, and that as to Andrews v. Warner, as will appear, no more than $1,000 is recoverable, even assuming in Warner's favor the point of pleading.

The surety acknowledges its liability under all three bonds, and Andrews, who is in any event liable over as principal, does not object to being joined in the judgment, though he did not execute any of the three. The only question therefore is as to the proper damages. The action of Andrews v. Warner was discontinued on June 23, 1928, before the "Peerless" shares had fallen in value. The first two attachments could have damaged Warner only by the poundage he was forced to pay, and by the cost of his lawyers who were preparing to vacate them, as they certainly would have been successful in doing. But Warner must be allowed the poundage as part of his damages under the third bond, not under the other two. The poundage due upon the shares he never paid at all; apparently Andrews released them at his own

cost. Conceivably the sheriff might have charged separate poundage upon the cash in each action; he did not, but at least after July 18, 1928, held it under the attachment in Welch v. Warner alone. His allocation was final.

Warner argues that as the shares could not be released, even after the discontinuance of Andrews v. Warner, until the poundage due upon them had been paid, his loss in that action should properly include any fall in their value up to July 18, 1928. As soon as Andrews v. Warner was discontinued, the shares were at once attached in Welch v. Warner and held thereafter under that attachment. It would therefore have done Warner no good to pay the poundage, which would not have released the shares. But even if we assume that the shares were detained not only by virtue of the third attachment but of the lien of the poundage upon the first two, so far as the damage resulted from the poundage, Warner could not recover for it. There is indeed some dispute in the books as to whether a party whose property has been attached, must discharge it from the lien by substituting a bond, on the principle of minimizing his damages. We leave that question open, because since the shares could have been released, so far as Andrews v. Warner was concerned, by paying merely the poundage—an amount amply secured by the bond—there can be no doubt. It is one thing to require the victim of a trespass to indemnify a surety for the full value of the property taken or to lose the substance of his remedy; that may be too stringent a condition. But it is certainly not too much to require him, if he has the means, to advance against the security of the plaintiff's bond the small percentage represented by poundage. For these reasons recovery upon the first and second bonds must be limited to $1,000. It then becomes a purely academic question whether that amount is awarded also under the first count, as damages for the attachments in Andrews v. Warner.

We can leave undecided whether the first count may be treated pro tanto as in trespass.

The items which the court allowed upon the third bond were the poundage paid upon releasing the cash in November, 1929, $1,760.63, and the premium of a surety bond to secure the ad damnum in Welch v. Warner, $9,533.33; $11,293.96 in all, leaving unappropriated only about $700 of the $12,000 bond. Any allowance, however small, for the cost of contesting Welch v. Warner upon the merits would use up this many times over. The judge thought that by the law of New York no such allowance was lawful because Warner had made no effort to dismiss the attachment in advance of trial. However no motion had any chance of success except to dismiss the complaint as insufficient in law on its face; and that motion he did make and thus disposed of the whole litigation. The law of New York, which in this matter is controlling, was somewhat unsettled until Thropp v. Erb, 255 N. Y. 75, 174 N. E. 67, 71 A. L. R. 1455. Cf. Brandenstein & Co. v. Castano (D. C.) 283 F. 843. That decision however settled it that counsel fees for defending the action upon the merits are allowable against the bond, if there is no other way to vacate the attachment. Possibly it may be a corollary that if the complaint is demurrable on its face, the defendant may recover only the cost of the demurrer; at least we can admit as much here. It is hardly necessary to do more than again merely to allude to the argument that the three attachments are to be regarded as a single wrong. After what we have said it is plain that each action was not only separate, but gave rise to a totally distinct cause of action.

The judgment must be modified by increasing it to $13,000; it will probably not be necessary to try the cause anew, but the mandate must award a new trial.

Judgment reversed and new trial ordered.