## T. W. WARNER CO. v. ANDREWS.

### No. 348.

Circuit Court of Appeals, Second Circuit.
June 7, 1937.

Straus & Osserman and A. M. Lowenthal, all of New York City (Stanley Osserman, A. M. Lowenthal, and Theodore F. Tonkonogy, all of New York City, of counsel), for appellant.

Cuthell, Appleby, Osterhout & Mills, of New York City (Howard Osterhout, Martin J. Her, and John B. Coman, all of New York City, of counsel), for appellee.

Before MANTON, SWAN, and CHASE, Circuit Judges.

SWAN, Circuit Judge.

This is an appeal by the defendant from a judgment for $550,610.71 in an action for damages for breach of contract. By stipulation the case was tried before the court and a jury of one, each side moving for a directed verdict. The plaintiff's motion was granted, and judgment was entered in accordance with the verdict directed.

In the summer of 1927, T. W. Warner Company (for brevity called Warner) entered into a written contract with Andrews, by which Warner was to sell, and Andrews was to buy, certain preferred and common shares of Peerless Scale Corporation. The contract was made in California, and the stock certificates, indorsed in blank, were

deposited with a Pasadena bank for delivery to Andrews upon receipt by it of the purchase price, consisting of $265,000 in cash, with interest thereon from July 1, 1927, and certificates for 100 shares of Liberty National Bank stock properly indorsed for transfer to Warner. Andrews' duty to buy was expressly made subject to a condition precedent, namely, completion of the refinancing of the Peerless Scale Corporation by Lisman & Company; his cash payments for the Warner stock were to be made in three installments: one-third fifteen days after public offering of the Peerless bonds, one-third thirty days later, and one-third sixty days later. Warner reserved the right to withdraw his stock if Andrews' first cash payment was not made on or before September 10, 1927. Delay occurred in the Peerless refinancing, the public offering of bonds not being made until October 4, 1927; but Warner did not exercise the option to withdraw his stock. Although no payment had been made by Andrews, the stock was still on deposit with the Pasadena bank on January 3, 1928, when Andrews wrote Warner that he was unable to purchase the stock because Lisman & Co. had failed to complete the Peerless refinancing. Warner replied that he refused to accept Andrews' "repudiation" and in March, 1928, brought suit in California to compel Andrews to perform the contract. Before any answer to the complaint had been filed, this suit was dismissed, without prejudice, on Warner's motion, June 7, 1928. By this date the parties had completely reversed their respective positions. Warner now wanted to keep his stock. On June 6th he notified Andrews' representative in Pasadena that, unless the stock was paid for that day, he would withdraw it from escrow and send it to New York for immediate sale. This he did on June 7th. On the same date his attorneys wrote Andrews a long letter narrating the history of transactions pertaining to the contract and closing as follows: "This letter is written for the purpose of acquainting you with the facts herein stated and to notify you that said agreement has been fully terminated and is of no further force and effect."

Andrews, on the other hand, now wanted to get the stock. On June 7th he attempted to tender payment for it and, subsequently, through an assignee, sued Warner for breach of the contract to sell it. The tender was held ineffectual, and the complaint was dismissed in Welch v. T. W. Warner Co., 47 F.(2d) 232 (C.C.A.2). Andrews also attached the stock in the hands of Warner's New York broker, thereby preventing its sale; and this attachment resulted in an action by Warner for malicious abuse of process, which also reached this court. T. W. Warner Co. v. Andrews, 73 F.(2d) 287 (C. C.A.2), cert. denied 294 U.S. 717, 55 S.Ct. 515, 79 L.Ed. 1250. While the stock was under attachment, the Peerless Scale Corporation, whose corporate name had been changed to General Vending Corporation, went into a merger referred to as the "Camco" deal; and, when the attachment was released, Warner exchanged his stock for Camco escrow certificates, in the belief either that he could do nothing else with it, or that he could secure a better price for it by going into the Camco merger. But, when the escrow certificates were replaced by Camco stock in 1929, the stock was of little value.

The present action was commenced March 17, 1931. The complaint was drawn as a suit for damages for breach of an executory contract of sale. It incorporated the agreement, alleged completion of the Peerless refinancing on December 13, 1927, the falling due of the installments of the purchase price on October 19, November 18, and December 18, 1927, the failure of Andrews to make the payments as agreed and that "at the time of such default" the stock had no market price, was unsaleable, and without value. The answer was a general denial. Upon the trial, however, the evidence took a much wider range than the issues as framed by the pleadings. No evidence was offered as to market value or actual value of the stock at the time of default alleged, but the proven facts were thought to establish that title to the stock passed to Andrews prior to June 7, 1928, and the correct measure of damages was held to be the purchase price. The plaintiff was allowed to amend the pleadings to conform to the proof, and this was assumed to have been done without formal pleadings being filed.

Several of the appellant's contentions with respect to the invalidity of the contract can be disposed of summarily. (1) The argument that it was an option, not a contract for purchase of the stock, is contradicted both by the language of the writing of July 22, 1927, and by the admissions of Andrews' answer to the complaint. (2) Nor can it be successfully contended that there was no consideration for Andrews' promise to buy because Warner reserved the power of withdrawing the stock, if the first in-

stallment of the price was not paid by September 10th. From July 22d to September 10th he was absolutely bound; so it was not an illusory promise, there was no lack of consideration, and Warner would remain bound until he should exercise his power to withdraw. Meurer Steel Barrel Co. v. Martin, 1 F.(2d) 687 (C.C.A.3); American Law Institute, Contracts, § 79; Williston, Contracts, § 140. (3) Neither was Andrews' promise, because conditioned on completion of the Peerless refinancing, too indefinite to constitute consideration for Warner's promise. For purposes of the contract this condition meant the public offering of the Peerless bonds and the payment to Andrews of the original Peerless notes held by him.

It is urged that Warner failed to prove that the condition precedent to Andrews' obligation to pay was ever performed. On this question of fact the trial court found against the appellant. There is ample to sustain the finding. It is conceded that the new Peerless bonds were offered to the public on October 4, 1927 and that on December 13, 1927, Andrews received payment of his Peerless notes. On the same date Andrews loaned $1,350,000 to Lisman & Co. and it is claimed that this was a modification of the Peerless refinancing which prevented its completion on December 13th. The District Court found that this was a separate transaction. Mr. Lisman so testified. Moreover, Andrews' affidavits in the prior litigation admitted that the "refinancing deal was completed." But, even if repayment of the Lisman loan were deemed essential to complete the Peerless refinancing, it would make little difference, for the loan was all repaid to Andrews by April 19, 1928. In any event, therefore, as stated in the District Court's opinion, Andrews was bound to pay for the stock, if not in December, 1927, then at least in April, 1928.

■ When a purchaser defaults for an unreasonable length of time in his obligation under a contract of sale, the seller may choose between three remedies: (1) He may hold the goods for the buyer and sue for the purchase price; or (2) he may sell as agent for the buyer and sue for the difference between what he gets and the contract price; or (3) he may keep the goods for himself and sue for the difference between the contract price and the market value at the time and place of delivery, which in the case at bar was, as we think, December 18, 1927, or, in any event, not later than April 19, 1928. Krauter v. Simonin, 274 F. 791, 793 (C.C.A.2); Dustan v. McAndrew, 44 N.Y. 72; Gay v. Dare, 103 Cal. 454, 458, 37 P. 466; Williston, Sales, §§ 554–556. The District Court's opinion states that Warner's complaint is based on the theory of the first of the above-mentioned remedies. With this we cannot agree. When he obtained the stock from the Pasadena bank and sent it to New York for sale, he elected to keep the stock and sell it for his own account. Clearly he was not holding the stock for the buyer, as in Hughes Mfg., etc., Co. v. Elliott, 178 Cal. 181, 172 P. 584, where it was left with the escrowee subject to the buyer's order. Nor was he purporting to sell as the buyer's agent. This is made very clear by the closing sentence of his attorney's letter of June 7th to the effect that "said agreement has been fully terminated and is of no further force and effect." Indeed, Andrews argues that this letter terminated the rights and duties of both parties under the contract. But, as it was a voluntary statement without consideration, it cannot, of course, operate as a release of Warner's right of action for an existing default. Prior to that notice Andrews could have cured his existing default by paying the contract price of the stock, as Warner had repeatedly urged him to do. The notice terminated this privilege and left the seller with the remedy the law gives when the buyer has defaulted and the seller has elected to keep the goods. So the present suit must be considered, as the pleadings disclosed, an action for damages based on the difference between the contract price and the value of the stock when the defendant defaulted. As such the judgment cannot be sustained, for no evidence whatever was offered to prove the market value or the actual value of the stock when the breach occurred, whether it be in December, 1927 or April, 1928.

Accordingly the judgment is reversed and the cause remanded.