**T. W. WARNER CO. v. ANDREWS et al.**
(two cases). *
No. 141.

Circuit Court of Appeals, Second Circuit.
Jan. 10, 1938.

*Writ of certiorari denied 58 S.Ct. —, 82 L.Ed. —.

14

Cuthell, Appleby, Osterhout & Mills, of New York City (Howard Osterhout, Martin J. Her, and John B. Coman, all of New York City, of counsel), for petitioner-appellee.

Eli J. Blair, of New York City, in pro. per.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The appellant, Eli J. Blair, is an attorney at law who was employed by the appellee to act as its attorney in litigation between it and one Archie M. Andrews. The employment was at the beginning that of a firm of attorneys of which the appellant was formerly a member, but later the appellant withdrew from that firm and took over the conduct of the litigation with the consent of the appellee and all others concerned. The agreement under which appellant's former firm acted was to conduct two actions for $16,000 which was paid in cash and 10 per cent. of whatever amounts were recovered. When appellant took over the contract, $10,-000 of the amount previously paid his firm, was by it turned over to him.

The litigation involved two actions. One of them was for the unlawful and malicious attachment by Andrews of the appellee's property. Attachment bonds had been executed by the American Surety Company. A judgment was obtained which was increased in amount by this court on appeal, though for technical reasons the judgment was reversed and a new trial granted. See T. W. Warner Co. v. Andrews et al., 2 Cir., 73 F.2d 287. In the second action, which was for breach of contract, a judgment for the plaintiff was obtained which was reversed on appeal. See T. W. Warner Co. v. Andrews, 2 Cir., 90 F.2d 965.

Before the judgment in the contract action was entered, the appellant and his client, anticipating a judgment, were concerned about the possibility of collection. Appellant advised issuing attachments against property not held in the name of Andrews but which there was reason to be-

lieve Andrews owned. This procedure was assented to by the appellee, and such property consisting of 35,000 shares of Dictagraph Products Corporation standing in the name of Pirnie Simons & Co., and in the possession of that firm in New York was attached. Other attachments were made of similar property held in the name of each of two other third parties.

Appellant informed his client that it would be necessary to give a bond to preserve the attachments pending determination of the ownership of the property attached and asked him to make the necessary arrangements for that. Mr. Warner, who acted for the T. W. Warner Company, was in California, and appellant wrote him explaining the procedure under sections 924 and 925 of the New York Civil Practice Act and telling him that under such procedure, after a bond for twice the value of the property attached had been given, a marshal's jury would be called to decide whether the attachment was lawful and that such a jury invariably exonerated the attaching marshal, leaving the third party claimant only the right to bring action to recover the property in which action the burden of proof would be upon the claimant. On June 6, 1936, the board of directors of T. W. Warner Company adopted a resolution under which appellant was elected assistant secretary of that corporation and empowered among other things to execute "* * * any affidavits, surety bonds, instructions to public officers which pertained to any attachment or execution which he may cause to be levied on behalf of this corporation. * * *" The steps appellant advised taking were approved by Warner until he learned from appellant's letter to him dated July 17, 1936, that he would be required to provide a bond for $1,000,000. He hesitated to incur the expense and the risk this entailed and so informed appellant. The appellant, however, still firmly advised the giving of the bond, and Mr. Warner came to New York on July 21, 1936, where he conferred with appellant at length for about two weeks trying to induce him to proceed without the bond. About the 6th of August, 1936, Warner went back to California, leaving the matter of giving the bond unsettled, but with the appellant still in charge of the litigation and with Warner desiring him to continue in charge of it.

But on August 13, 1936, the appellant wrote Warner explaining that, unless the bond was given within three days after claimant demanded the attached property of the marshal, he might deliver it to the claimant, and demanding that appellee stand prepared to give the bond. He said that failure to do so would be a breach of contract "which releases me (appellant) from further obligation in the matter." And stated further: "If you do not carry on your part, I am perfectly willing and will send you a blank substitution so that you may name your own attorney, subject to paying my fees to date." Appellant also advised Warner that under New York law, "If the bond is not given, you may within the same three days after notice and demand begin a proceeding for the purpose of having the title to the property decided." But he advised against such procedure, as he was of the opinion, though he was not sure as he said the law was new, that the burden of proof would be upon the Warner Company in such an action instead of upon the third party claimant if the bond were given and such party had to sue. Mr. Warner replied in a letter to appellant dated August 17, 1936, saying in part that he was unable to follow to a definite conclusion appellant's "comments and analysis on the New York attachment laws," and that, "Under the authority of the resolution of June 6th, 1936, you are authorized to proceed against the property of Archie M. Andrews, and I trust that in pursuing this property you are not and will not involve the T. W. Warner Company in liabilities to third parties." He also wrote appellant, "Of course, the T. W. Warner Company will advance the necessary legal costs and disbursements (excluding fees), in pursuing Mr. Andrews' assets, and would rather advance those in a larger sum than mayhap be necessary than involve itself in claims against it on the part of other parties." To this appellant replied by letter on August 19, 1936, saying that the letter of Warner did not answer "the pertinent and relevant facts contained in my letter to you of August 13th." He said that he did not "purport to act" as an officer of T. W. Warner Company under the resolution designating him one but as attorney for the company; that he had attached the property "on evidence deemed sufficient to me" and that Warner had broken the contract under which appellant acted as attorney. Warner replied by letter of August 24th, opening with the words, "I am just in receipt of your letter of Aug. 19th, and I don't think it is necessary or desirable to get into any squabble at this stage of the game. There is very important work which must be done which you have initiated, and

of course I am relying on you to do this work." He again assured appellant that he urged "going after Andrews assets in payment of this judgment, but in so proceeding I don't want to get involved in expensive law suits, but want to proceed along the legal lines given us by virtue of the judgment."

There was further correspondence between the appellant and Warner in which appellant with increasing acrimony accused Warner of breach of contract in failing to provide the bond and threatened to withdraw from the case if he did not agree to provide it within three days after third parties should move to dissolve the attachments. Warner denied any breach, but would not promise to give the bond, saying that he did not understand the necessity for that and again requested appellant to proceed against the property of Andrews without incurring any liability to third parties. Finally, appellant wrote Warner a lengthy letter on September 9, 1936, in which he said, "Because of your willful breach of contract I am therefore forced to withdraw from this case and to call upon you to pay my fees and to designate a new lawyer immediately." Warner replied again, denying any breach of contract and requesting the appellant to act as attorney, but saying in conclusion, "if you now wish to withdraw from the case and abandon same, my only recourse will be to ask Judge Knox to re-allocate the fee, and if that is your desire, please indicate it in a return letter, and I will take the necessary action." The appellant replied that his decision to withdraw because of Warner's breach of the contract was irrevocable and that "Finally, I might add that I will be glad to deliver any papers in this case to your new attorney in order that he may proceed with any of the work which I have undertaken without delay on condition that you pay me the sum of ten per cent of the amount of the verdict plus ten per cent of the accrued interest thereon, which I will deposit in a separate account to the order of the Court on your proceeding for a determination of our respective rights."

■ It was under the circumstances above stated that the appellant ceased to act as attorney in the litigation under his contingent contract. The evidence supports the finding of the special master, confirmed by the court below, that appellant abandoned his work as attorney under the contract because appellee declined to give the bond upon which appellant insisted. Whether, however, the appellant broke the contract when he refused to proceed further with the work depends upon whether he had the right to insist upon the appellee's providing the bond as a condition upon his continued performance. It is clear enough that appellant has no right to further fees under the contract if he himself was the one who committed the first breach. Woodbury v. Andrew Jergens Co., 2 Cir., 61 F.2d 736; National Surety Co. v. Long, 8 Cir., 125 F. 887; Brooklyn Heights R. R. Co. v. Brooklyn City R. R. Co., 151 App.Div. 465, 135 N.Y.S. 990.

■ We take it for granted that, under such a contingent fee contract as this, appellant's client was bound to co-operate with him in every reasonable way to the end that the litigation would be successful and the agreed fee be earned and paid. Having agreed to proceed by way of attachments before judgment as the appellant advised, it follows that the appellee was also bound to aid the appellant in reasonable ways to make the attachments effective. This, of course, included accepting the reasonable and proper advice of the attorney as to procedure. But beyond that the attorney may not require the client, upon pain of breach of contract, to accede to his wishes. Here the matter upon which they fell apart was the giving of a bond for $1,000,000. Such a bond was expensive and would require a large amount of collateral if obtained from a surety company. The property attached might drop materially in value and there was the possibility that substantial losses might be the result. That the appellee was loath to incur so great expense and risk can fairly be charged only to prudence. Had that been the only way to support the attachments, however, we are not prepared to say that appellee could have refused to provide the bond without breach of the contract. Decision does not turn on that point, however, for that was only one way to proceed.

■ On September 1, 1936, and before any bond was required to meet the demands of claimants, the New York law was effectively amended to give the attaching party the right to sue to determine respective rights of the attaching creditor and claimants to the property. The appellant knew this, and so advised the appellee before he refused to act longer as attorney unless appellee would agree to provide the bond. The only thing the appellant had to support his insistence upon the giving of a bond instead of proceeding by an action under the amendment

was a possible difference in the burden of proof. When that is balanced against the risk and expense of so large a bond, we think the demand of the appellant was unreasonable, and that when he made that a condition upon his further performance he broke the contract himself.

The appellant's abandonment of his work before completion had the same effect upon his right to contingent fees in the attachment suit as it did in the contract action. The contract was a specific one and entire, though it involved services in two actions. The breach accordingly left the contract for professional services unperformed by the appellant without just cause. So he may not recover either upon the contract or by way of quantum meruit. In re Badger, 2 Cir., 9 F.2d 560; Woodbury v. Andrew Jergens Co., supra.

Order affirmed.